IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GAUGHAN GAMING – NATIVE )
LIGHTS, LLC and GAUGHAN )
GAMING - TONKAWA, LLC )
)
Plaintiff, )
)
v. ) Case No. CIV-11-330
)
TONKAWA TRIBE OF OKLAHOMA )
and TONKAWA TRIBAL GAMING )
COMMISSION )
)
Defendants. )
)

**DEFENDANT TONKAWA TRIBE OF OKLAHOMA'S RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

COMES NOW Defendant Tonkawa Tribe of Oklahoma (the "Tribe"), by and through its counsel of record, and hereby respectfully requests this Court deny Plaintiffs' *Emergency Motion for Temporary Restraining Order and Temporary Injunction* [Exhibit 3 of Docket No. 1]. In support of its motion, the Tribe alleges and states as follows:

I.   **BACKGROUND AND STATEMENT OF FACTS**

1. The Tonkawa Tribe of Oklahoma (hereinafter, "the Tribe") is a federally-recognized tribe of Indians. The headquarters of the Tribe is located on tribal trust land at Fort Oakland, located within the geographic region of Kay County, Oklahoma.

2. Pursuant to Article III of the Tribe's Constitution, the Tonkawa Tribal Council is the supreme governing body of the Tribe.

3. Article V of the Tribe's Constitution delegates power to transact business or "otherwise speak or act on behalf of the Tribe in all matters in which the Tribe is

empowered to act" to the Tribes' Business Committee, consisting of a President, Vice-President, and Secretary-Treasurer.

4. The Tribe is the owner of two gaming facilities: the Tonkawa Casino, located at 10700 S. Allen Drive in Tonkawa, Oklahoma; and Native Lights Casino, located at 12375 North Highway 77, Newkirk, Oklahoma.

5. Conduct of gaming on Indian lands is regulated by tribal and federal law pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq.

6. IGRA at 25 U.S.C. § 2711 requires contracts for management of Indian gaming facilities to be approved by the Chairman of the National Indian Gaming Commission (the "NIGC").

7. Gaughan Gaming – Native Lights, LLC ("GGNL") is a Nevada domestic limited liability company. Its Articles of Organization were filed with the Nevada Secretary of State on July 31, 2006. GGNL's sole managing member is Gaughan Gaming, LLC, and its registered agent is Gregory S. Wright. The address listed for GGNL's registered agent, and its managing member is 8924 Spanish Ridge Avenue, Las Vegas, Nevada.

8. Gaughan Gaming – Tonkawa, LLC ("GGT") is a Nevada domestic limited liability company. Its Articles of Organization were filed with the Nevada Secretary of State on February 13, 2007. GGT's sole managing member is Gaughan Gaming LLC.

9. Gaughan Gaming, LLC, ("Gaughan Gaming") which is the sole owner, shareholder and/or member of GGNL and GGT, is a Nevada domestic limited liability company. Its Articles of Organization were filed with the Nevada Secretary of State on July 19, 2006. Gaughan Gaming's managing member is John Gaughan.

10. Prior to his management of the Tonkawa gaming facilities, John Gaughan had no prior management experience in the field of Indian Gaming.

11. On or about May 30, 2007, Philip N. Hogen, Chairman of the NIGC notified the Tribe and GGNL of the Chairman's approval of an "Amended and Restated Management Agreement" between the Tribe and GGNL.  The Agreement was executed on April 21, 2007, by Anthony Street, then President of the Tonkawa Tribe of Indians on behalf of the Tribe, and John Gaughan, Managing Member of Gaughan Gaming.

12. On or about September 11, 2007, Philip N. Hogen, Chairman of the NIGC notified the Tribe and GGT of the Chairman's approval of an "Amended and Restated Management Agreement" between the Tribe and GGT.  The Agreement was executed on April 21, 2007, by Anthony Street, then President of the Tonkawa Tribe of Indians on behalf of the Tribe, and John Gaughan, Managing Member of Gaughan Gaming.

13. During its tenure as manager of the Tribe's gaming facilities, Gaughan Gaming established a record of non-compliance with gaming regulations mandated by IGRA dating back to January 2009, to wit:

    a.    While managing the Tribe's gaming facilities, Gaughan Gaming incurred numerous Notices of Violation ("NOVs") from the Tonkawa Gaming Commission, (January 22, 2009;  April 27, 2009; January 26, 2010; March 2, 2010; March 5, 2010; July 19, 2010 and September 8, 2010) for failure to comply with tribal and federal gaming regulations.  Copies of the NOVs issued to Gaughan Gaming are attached as Exhibit "1".

    b.    Gaughan Gaming also failed to remit certain payments to the NIGC as

required by IGRA and the terms of the Management Agreements, thereby causing the Tribe to be issued a Notice of Violation from the National Indian Gaming Commission (February 18, 2009). A copy of the NOV is attached as Exhibit "2".

14. In April 2008, pursuant to the requirements of its Constitution, the Tribe elected a new Business Committee, consisting of Donald Patterson as President; James Schreen as Vice-President; and Candace Myer as Secretary-Treasurer.

15. Upon taking office, the newly-elected business committee began reviewing the performance of the Manager of the Tribe's gaming facilities, Gaughan Gaming, by and through GGNL and GGT. The Tribe commissioned a professional audit of the gaming facilities and Gaughan Gaming's management performance as permitted by the Management Agreements.

16. Based upon investigation and review of business records, as well as review of the performance audit, the newly-elected business committee discovered material breaches of the Management Agreements, some of which had been ongoing since GGNL and GGT began managing the facilities.

17. Via letter of March 10, 2010, the Tribe notified Gaughan Gaming of its intent to declare a default of the Management Agreements based upon number of material breaches asserted by the Tribe.

18. By letter of April 1, 2010, Gaughan Gaming notified the Tribe of its request to meet and confer pursuant to sections 7.1 and 20.1 of the Management Agreements, and provided a written response to the allegations stated in the Tribe's letter of March 10, 2010.

19. For the next several months of 2010, Counsel for Gaughan Gaming and the Tribe

made attempts to amicably meet and confer pursuant to §20.1 of the Management Agreements.

20. On August 17, 2010 Gaughan Gaming served notice of its demand for arbitration to the Tribe pursuant to Article 20 of the Management Agreements.

21. On September 28, 2010, the Tonkawa Gaming Commission suspended the gaming license of Gaughan Gaming due to alleged regulatory violations and the failure to meet certain conditions placed on their gaming license by the tribal regulatory body.

22. On September 29, 2010, Gaughan Gaming filed its written Notice of Intent to Arbitrate with the American Arbitration Association.

23. On October 20, 2010, the Tribe filed its Answering Statement and Counterclaim with American Arbitration Association. In its counterclaim, the Tribe alleges material breaches of the management agreements

24. On March 22, 2011, an action was commenced in the District Court of Kay County, State of Oklahoma, entitled Gaughan Gaming – Native Lights, LLC and Gaughan Gaming – Tonkawa, LLC v. The Tonkawa Tribe of Indians of Oklahoma and the Tonkawa Tribal Gaming Commission.

25. On March 24, 2011, the Tribe removed the case to this Court; that same day, the Tribe filed notices of removal in Kay County District Court.

II. **ARGUMENT AND AUTHORITIES**

   A.   **Introduction**

Preliminary injunctions are disfavored. *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). Consequently, a party requesting a preliminary

injunction must make a heightened showing to demonstrate (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the movant; and (4) that the injunction is in the public interest. *Id.* Further, a preliminary injunction has the limited purpose of preserving the relative positions of the parties until a trial on the merits can be held. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Accordingly, courts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case, but especially so when such an injunction would alter the status quo prior to a trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976-77 (10th Cir. 2004).

Further, the Tenth Circuit has identified three types of preliminary injunctions which are disfavored, and therefore require a heightened showing by the movant as a prerequisite to preliminary relief: (1) preliminary injunctions that disturb the status quo; (2) preliminary injunctions that are mandatory as opposed to prohibitory; and (3) preliminary injunctions that afford the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits." *Id.* at 977. A mandatory preliminary injunction is one which requires the nonmovant to take affirmative action. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

As explained below, in this case Plaintiffs' request for relief to restore possession, custody, and/or control over the Tribe's gaming facilities implicates all three of these categories of requests requiring a heightened showing. First, Plaintiffs are seeking injunctive relief against the Tribe that would severely alter the status quo, as Plaintiffs have not had possession, custody, or control of the Tribe's gaming facilities for nearly six months.

6

Granting Plaintiffs' request to return control of the Tribe's gaming facilities to Plaintiffs would result in a disruption to the gaming facilities, which are now operating more successfully than they were operating when under control of Plaintiffs. Further, granting the relief requested to Plaintiff could deprive the Tribe of a substantial portion of the revenue base upon which it relies to fund its tribal government.

Second, Plaintiffs are seeking a temporary injunction from this court that is mandatory, as opposed to prohibitory; i.e. rather than confining its request for relief to prohibiting the Tribe from taking certain actions that could change the status quo, the Plaintiffs are requesting the Court to order the Tribe to take affirmative steps that will not only alter the status quo, but will put the Tribe in harm's way by subjecting the Tribe to violations of IGRA by reinstating a noncompliant management contractor. Further, Plaintiffs are requesting an order from this Court that would interfere with the current regulatory scheme that required the Tribe to remove Plaintiffs from its facilities in the first place. Requiring the Tribe to reinstate possession, custody, and control of the Tribes' own gaming facilities to Plaintiffs would not only subject the Tribe to liability under IGRA for permitting an unlicensed management contractor to operate the facilities, it would effect a substantial interference of the economic stability of a separate, independent sovereign government.

Finally, with regard to the relief requested by Plaintiffs as to the Tribe, restoring possession, custody, and/or control of the Tribes' gaming facilities via a temporary restraining order would effectively grant Plaintiffs with substantially all the relief it may recover at the conclusion of a full trial on the merits. Restoring Plaintiffs to possession, custody, and/or control of the gaming facilities would give Plaintiffs – who have repeatedly

demonstrated hostility toward the Tribe's government – complete control over funds from the gaming operations which are the primary source of funding for the Tribe. Stated more colorfully, granting the relief requested by Plaintiffs would effectively give the proverbial fox unchecked control over the henhouse.

### B.  Plaintiffs' Request to Reinstate Control of the Casino is Unlikely to Succeed on the Merits Because Plaintiffs are Not Currently Licensed to Operate the Tonkawa Gaming Facilities as Required by Federal Law.

Plaintiffs' request for an order restoring control of the casino is unlikely to succeed because federal law clearly preempts the rights Plaintiffs are asserting under Article 21 of the Management Agreements. In its Motion, Plaintiffs allege that the Tribe "stands to lose only what it has no right to – control of the Casinos." This statement is not only incorrect as a matter of fact, it is incorrect as a matter of law.

Plaintiffs currently do not have a license to operate the gaming facilities as required by IGRA. Consequently, control of the gaming facilities must remain with the owner – the Tribe – pending resolution of the gaming licensing proceedings before the Tonkawa Gaming Commission, the administrative body established by the Tribe to issue gaming licenses and adjudicate licensing proceedings, all as required by IGRA.

Further, Plaintiffs' willful refusal to comply with tribal gaming regulations and fulfill its obligations pursuant to the provisions of its management contracts is a direct violation of IGRA, and therefore makes it unlikely that Plaintiffs will succeed on the merits.

IGRA at 25 U.S.C. §2702 articulates a clear policy that operation of gaming by tribes, first and foremost, is to benefit tribes, not non-tribal gaming managers:

Sec. 2702. Declaration of policy
The purpose of this chapter is –

(1) to provide a statutory basis for the operation of gaming by Indian tribes as *a means of promoting tribal economic development, self-sufficiency, and strong tribal governments*;

(2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate *to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players*; and

(3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and *to protect such gaming as a means of generating tribal revenue*.

(Emphasis added.)  The federal standards established pursuant to the requirements of the act are located in 25 C.F.R. Parts 502-577.  These regulations provide a complex regulatory scheme for Indian gaming, which includes certain provisions whereby Indian gaming licensing is regulated by two separate sovereign entities:  the NIGC and tribal gaming commissions.  IGRA requires tribes to submit tribal gaming resolutions and ordinances regulating the conduct of Class II and Class III gaming on Indian lands to the NIGC Chairperson for review and approval.  25 U.S.C. § 2710 (b)(2); (d)(1)(A)(ii).  IGRA mandates that tribal gaming ordinances include specific provisions for licensing primary management officials and key employees.  Among other requirements, IGRA specifically requires tribal gaming licensing regulations to include:

> "[A] standard whereby any person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming shall not be eligible for employment."

9

25 U.S.C. § 2710 (b)(2)(F)(ii)(II).

In a nutshell, tribes are required to license and regulate management contractors and their employees. Under IGRA, the Tribe is expressly barred from employing unlicensed management contractors and employees of management contractors. Consequently, in this case, federal law clearly preempts claims by Plaintiffs and their employees to possession, custody, and control of the gaming facilities until Plaintiffs have a valid gaming license from the Tribe. The license of Plaintiffs' sole shareholder has been suspended by the Tribe's Gaming Commission pending final adjudication of the licensing proceeding – a proceeding which Plaintiffs are further delaying by asking this Court to enjoin. Thus, in effect, in asking for this Court to reinstate possession of the gaming facilities to Plaintiffs, Plaintiffs are asking this Court to award relief to Plaintiffs that violates federal law and interferes with the tribal administrative process mandated by IGRA.

Finally, to the extent Plaintiffs are alleging any possessory rights to the gaming facilities, IGRA bars Plaintiffs from possessing a proprietary interest in the gaming properties. IGRA expressly requires tribal gaming ordinances to contain provisions ensuring that tribes have the "sole proprietary interest and responsibility for the conduct of Indian gaming activity." 25 U.S.C. § 2710 (b)(2)(A). Further, IGRA specifically states that "[n]o management contract for the operation and management of a gaming activity …. shall transfer or, in any other manner, convey any interest in land or other real property, unless specific statutory authority exists and unless clearly specified in writing in said contract." 25 U.S.C. § 2711(g). Consequently, any request for relief by Plaintiffs that would have the effect of removing the sole proprietary interest and responsibility for the conduct of gaming activity from the Tribe

must fail as a matter of law.

### C. Plaintiffs Have Failed to Demonstrate They Will Suffer Irreparable Harm Absence of Relief Requested and for Which No Other Remedy is Available At Law

In order to demonstrate irreparable harm that would result in absence of a preliminary injunction, a movant must demonstrate more than just purely speculative harm, but rather, the movant must demonstrate a significant risk of harm that will be uncompensable with monetary damages. *Greater Yellowstone Coaliion v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

Plaintiffs' claim that their reputation will be harmed if injunctive relief is not granted is unsupportable by the facts. In their Motion, Plaintiffs allege that failure to grant the requested relief of returning control of the facilities to the Plaintiffs will result in "injury to Gaughan Gaming's reputation and goodwill, as well as the potential for incalculable lost profits." Pls.' Mot. for TRO at 12-13. Yet, the facts themselves demonstrate that Plaintiffs and its parent company, Gaughan Gaming, had no previous experience managing Indian gaming facilities prior to the formation of these companies in 2006 and 2007. GGNL was not formed until July 31, 2006, eight months and twenty-one days before the execution of the Amended and Restated Management Agreement between GGNL and the Tribe on April 21, 2007. Likewise, GGT was not created until February 13, 2007, a mere sixty-seven days before the Management Agreement between GGT and the Tribe was executed on April 21, 2007. Essentially, Plaintiffs had no reputation or goodwill in the field of Indian gaming prior to its employment by the Tribe. Any reputation or goodwill Plaintiffs developed would be solely as a result of its performance as manager of the Tribe's gaming facilities. Plaintiffs' performance is currently the subject of the pending arbitration proceeding between Plaintiffs

and the Tribe.   Compensation for any alleged harms to Plaintiffs' goodwill and reputation should be fashioned in the arbitration forum, rather than this forum.

In addition, in their Motion, Plaintiffs claim that failure to grant their request for restoration of possession of the gaming facilities will result in "incalculable lost profits." Again, the heart of the underlying arbitration dispute concerns the parties' dispute over the Plaintiffs' performance in managing the gaming facilities, which the Tribe alleges resulted in losses of gaming revenue to the Tribe.  Plaintiffs have an adequate redress at law of the harms alleged by way of money damages claimed in the underlying arbitration proceeding, in which Plaintiffs have claimed damages of over $30,000,000.00.

Since control of the Tribe's gaming facilities and its operations was returned to the Tribe from Plaintiffs, the performance of the gaming facilities has increased, not declined as Plaintiffs have speculated. The Tribe is prepared to demonstrate measurable improvements in facility performance since possession and control of the facilities was restored to the Tribe.  Specifically, these improvements include, *inter alia*, improved customer satisfaction with the gaming facilities since Plaintiffs were removed as operators; improved employee satisfaction and performance with the management of the casino in Plaintiffs' absence; correction of certain deficiencies in the Minimum Internal Control Standards ("MICS") mandated by the NIGC, which Plaintiffs had failed to correct during their tenure as operators; and corrections of technical errors in player tracking systems, which have minimized financial losses to the facilities that were present when Plaintiffs were in control of the facilities.  These improvements in facility operations would likely be nullified if possession, custody, and control of the facilities were returned to Plaintiffs.  Thus, award of

the relief requested by Plaintiffs against the Tribe would result in affirmative economic injury to the Tribe that substantially outweighs the alleged injury to Plaintiffs in absence of relief.

**D.   A Preliminary Injunction Granting the Relief Requested by Plaintiffs Would Be Adverse to the Public Interest.**

As noted earlier, one of the stated policy goals of IGRA is to regulate Indian gaming as a means of promoting tribal economic development.  Thus, any relief granted by this Court that harms or undermines the Tribe's economic development, self-sufficiency, and/or the Tribe's government is expressly contrary to the public interest.  In this case, the relief requested by Plaintiffs would harm all three of these interests articulated by IGRA.

Since the removal of Plaintiffs from the Tribes' gaming facilities, the success of the casinos has improved.  In addition, as demonstrated by Exhibits 1 and 2, during Plaintiffs' tenure as manager of the gaming facilities, Plaintiffs were cited numerous times by both the NIGC and the Tonkawa Tribal Gaming Commission for multiple failures to comply with applicable gaming regulations, thereby endangering the operation of the facilities by exposing the Tribe to liability for failure to comply with IGRA.  Because the Tribe's government, economic development, and self-sufficiency is dependent upon the gaming revenue generated by the facilities, returning possession, custody, and/or control over the gaming facilities to the Plaintiffs, who have demonstrated a willful disregard of federal and tribal gaming regulations and a hostility toward the Tribe's government, would provide Plaintiffs and its shareholder with the opportunity to subject the Tribe and its members to further harm and injury.  Consequently, awarding the relief Plaintiffs request is clearly contrary to the public interest.

III. **CONCLUSION**

For the forgoing reasons, Defendant Tonkawa Tribe of Oklahoma respectfully requests this Court deny Plaintiffs' Emergency Motion for Temporary Restraining Order and Temporary Injunction.

Respectfully Submitted this 27th Day of March, 2011

/s/ *Stephanie Moser Goins*
_____
Gary S. Pitchlynn, OBA #7180
O. Joseph Williams, OBA #19256
Stephanie Moser Goins, OBA #22242
PITCHLYNN & WILLIAMS, PLLC
124 East Main Street
P.O. Box 427
Norman, Oklahoma 73070
Telephone: (405) 360-9600
Facsimile: (405) 447-4219
Email: gspitchlynn@pitchlynnlaw.com
          jwilliams@pitchlynnlaw.com
          smgoins@pitchlynnlaw.com

ATTORNEYS FOR DEFENDANT
TONKAWA TRIBE OF OKLAHOMA

**CERTIFICATE OF SERVICE**

I hereby certify than on March 27, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the Following ECF Registrants:

Jimmy Goodman
Regan Strickland Beatty
CROWE & DUNLEVY, PC
20 North Broadway, Ste 1800
Oklahoma City, OK  73102-8273

D. Michael McBride III
CROWE & DUNLEVY, PC
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK  74103-3313

*Attorneys for Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC*

Roger Wiley
ROSETTE & ASSOCIATES, PC
14 Crooked Oak Lane
McAlester, OK  74501


*Attorneys for Co-Defendant Tonkawa Tribal Gaming Commission*

/s/ *Stephanie Moser Goins*
_____
Stephanie Moser Goins