## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

GAUGHAN GAMING – NATIVE          )
LIGHTS, LLC and GAUGHAN          )
GAMING - TONKAWA, LLC            )
                                 )
Plaintiffs,                      )
                                 )
v.                               )          Case No. 5:11-cv-00330-HE
                                 )
TONKAWA TRIBE OF OKLAHOMA         )
and TONKAWA TRIBAL GAMING         )
COMMISSION,                      )
                                 )
Defendants.                      )
                                 )

## DEFENDANT TONKAWA TRIBE OF OKLAHOMA'S MOTION TO DISMISS
## AND OPENING BRIEF IN SUPPORT

COMES NOW Defendant Tonkawa Tribe of Oklahoma (the "Tribe"), by and through its counsel of record, and hereby respectfully requests this Court dismiss the instant case filed in the District Court of Kay County under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) because Plaintiffs Gaughan Gaming-Native Lights, LLC ("GGNL") and Gaughan Gaming-Tonkawa, LLC ("GGT") (collectively, "Plaintiffs" or "Gaughan Gaming") have failed to state a claim upon which relief may be granted.

Also, the Tribe requests the Court deny and dismiss Gaughan Gaming's *Emergency Motion to Set Immediate Hearing on Motion for Temporary Restraining Order* [filed in this action as Docket No. 8] on the basis that the Tribe asserts its sovereign immunity from any affirmative relief requested by Gaughan Gaming.  In support of its motion, Defendant alleges and states as follows:

## BACKGROUND AND STATEMENT OF FACTS

### I.      Gaughan Gaming Is A Licensed Entity Subject To Tribal
### Regulatory Authority Under Federal And Tribal Law.

1.1     Gaughan Gaming was issued a gaming license by Defendant Tonkawa Tribe Gaming Commission ("TTGC") on or about June 28, 2007, to manage and operate gaming

activities on certain Tribal lands under Tribal jurisdiction located in Kay County, Oklahoma. The TTGC is an independent regulatory body established under Tribal law

1.2     Gaughan Gaming's gaming license to manage and operate these gaming activities is in accordance with and required by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* (the "IGRA"), the Gaming Ordinance of the Tribe, as amended, the regulations and Tribal internal control systems and standards adopted by the TTGC, and the Tribe's Pre-Opening Agreement ("POA") between the Tribe and the National Indian Gaming Commission ("NIGC") dated July 7, 2006.

1.3     Gaughan Gaming received approval by the Chairman of the NIGC to be a management contractor over the Tribe's gaming activities under terms of two separate management agreements governing the relationship between the Tribe and Gaughan Gaming[1], in accordance with the IGRA (on May 30, 2007 as to the Tribe's Native Lights Casino, and on September 11, 2007 as to the Tribe's Tonkawa Casino).

1.4     Under the Tribe's Gaming Ordinance, the TTGC has the authority to deny, suspend, or revoke a gaming management contractor license and to impose civil fines and penalties for, among other things, violation of, or non-compliance with, the Ordinance, Regulations, technical standards, Gaming Compact, technical standards for gaming activities, license conditions, and any lawful directives or orders of the TTGC, or for any act, action, or omission which the TTGC determines is a detriment or impediment to the casino gaming operations.

1.5     On September 28, 2010, the TTGC Executive Director filed a Complaint with the TTGC against Gaughan Gaming requesting a disciplinary action in the form of revocation of Gaughan Gaming's management contractor license on the allegations that Gaughan Gaming

---

[1]  Even though there are two separate management agreements, the terms are identical in all material respects and will be referred to, collectively, herein as the "Management Agreement."  A copy of the Management Agreement can be found at the NIGC's website: http://www.nigc.gov/Portals/0/NIGC%20Uploads/apprvdmgmtcont/Tonkawa-gaughanandamend_9-11-07.pdf

was in violation of its license and an order issued by the TTGC on June 28, 2007. Also, on September 28, 2010, the TTGC issued a suspension order against Gaughan Gaming, which was appealed by Gaughan Gaming. The proceedings initiated by the Complaint were held in abeyance until the resolution of the proceedings regarding the suspension order.

1.6     The TTGC held a hearing with full participation by Gaughan Gaming regarding the suspension order on January 26, 2011, and, by written order dated February 28, 2011, the TTGC upheld the suspension order. On March 8, 2011, the TTGC issued an order lifting the abeyance as to the proceedings initiated by the original Complaint. During the course of the proceedings regarding the suspension order, Gaughan Gaming was involved in the process and had filed several motions seeking relief, including some which requested that specific paragraphs of the initiating Complaint be dismissed.

1.7     On January 25, 2011, the TTGC ordered that several of Gaughan Gaming's motions were denied as untimely but "to the extent the Motion relates to dismissal of specified paragraphs of the Complaint, such requests shall be considered in the event the suspension is upheld and the stay issued on the Revocation proceedings is lifted by the TTGC."

1.8     The TTGC is moving forward with addressing the merits of the allegations in the original Complaint; however, on March 22, 2011, Gaughan Gaming initiated an action in Kay County District Court seeking, among other things, injunctive relief against the TTGC from exercising its lawful regulatory authority over Gaughan Gaming in addressing the merits of the TTGC Complaint.

## II.     The Tribe And Gaughan Gaming Are In Arbitration Pursuant To Gaughan Gaming's Management Agreement.

2.1     On March 10, 2010, the Tribe notified Gaughan Gaming of its intent to declare a default of the Management Agreement based upon a number of material breaches of said agreements and in accordance with Article 9 of the Management Agreement.

2.2     On August 17, 2010, Gaughan Gaming served notice of its demand for

arbitration to the Tribe pursuant to Article 20 of the Management Agreement.

2.3     On September 29, 2010, Gaughan Gaming filed with the American Arbitration Association (the "AAA") its written Notice of Intent to Arbitrate.

2.4     On October 20, 2010, the Tribe filed its Answering Statement and Counterclaim with the AAA.

2.5     Pursuant to Article 20 of the Management Agreement, each party selects its own arbitrator and, from those two appointments, a third arbitrator is selected for a full three-member arbitration panel to hear and adjudicate the dispute between the parties. As of March 25, 2011, both the Tribe and Gaughan Gaming have selected their own arbitrators, and the AAA is in the process of considering any objections from the parties to the third arbitrator that has recently been selected by the two already seated arbitrators.

2.6     Many of the material breaches of the Management Agreements as alleged by the Tribe are based on the same underlying acts or omissions by Gaughan Gaming that the TTGC is considering in making a determination in Gaughan Gaming's license revocation proceedings; however, the arbitration hearings before the AAA is a separate matter, and any finding or award in the arbitration matter is not dispositive on the independent determination that will be made by the TTGC in the license revocation proceedings, and vice versa.

2.7     The Tribe and Gaughan Gaming are proceeding with having their dispute heard and decided by an arbitration panel in accordance with the Management Agreement; however, on March 22, 2011, Gaughan Gaming initiated an action in Kay County District Court seeking, among other things, injunctive relief against the Tribe and requesting the State court immediately restore Gaughan Gaming to its position as manager of the Tribal casinos, to order the Tribe to immediately deliver possession and management control of the casinos to Gaughan Gaming, and to enjoin the Tribe from any actions designed to remove Gaughan Gaming from its position as manager of the casinos until conclusion of the arbitration.

## ARGUMENT AND AUTHORITIES

**A.     The District Court of Kay County Does Not Have Subject Matter Jurisdiction To Hear Gaughan Gaming's Petition For Injunctive Relief Against The Tribe And The TTGC.**

The Tribe objects and seeks dismissal of the state court action filed by Gaughan Gaming under the doctrine of Tribal sovereign immunity.  Further, the Tribe requests the Court deny and dismiss Gaughan Gaming's *Emergency Motion to Set Immediate Hearing on Motion for Temporary Restraining Order* [filed in this action as Docket No. 8] on the basis that the Tribe asserts its sovereign immunity from any affirmative relief requested by Gaughan Gaming in any manner before this Court.

Tribal sovereign immunity invokes a question of subject matter jurisdiction, which is a question of law.  *Fletcher v. United States*, 116 F.3d 1315, 1323-24 (10th Cir. 1997); *Pales v. Cherokee Nation Enterprises*, 216 P.3d 309, 320 (Okla. Civ. App. 2009).  Tribal sovereign immunity is a matter of subject matter jurisdiction that may be decided under Fed. R. Civ. P. Rule 12(b)(1). *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007).  The doctrine of tribal sovereign immunity is well settled caselaw established by the United States Supreme Court. *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S 751, 756 (1998); *Fletcher*, 116 F.3d at 1324.  "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla.*, 523 U.S at 754. Although Congress may abrogate a tribe's sovereign immunity, any abrogation of tribal sovereign immunity "cannot be implied, but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  Likewise, in order to waive its own sovereign immunity, a tribe's waiver must be "clear." *Okla. Tax Comm'n. v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991).

A tribe's sovereign immunity extends to tribal entities, and applies irrespective of whether the tribal activities at the heart of the dispute occurred on or off reservation lands, or whether the nature of the activities is commercial or noncommercial. *Kiowa Tribe of Okla.*, 523 U.S. at 754-58;  *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Triba of Okla.*, 498 U.S. 505,

510 (1991).  Tribal sovereign immunity extends to both the Tribal governing bodies and to Tribal agencies, like the TTGC, which act as an arm of the Tribe.  *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).

On March 22, 2011, Gaughan Gaming filed in the District Court of Kay County (the "State Court") a *Petition for Injunctive Relief* and an *Emergency Motion for Temporary Restraining Order and Temporary Injunction* and named as defendants the Tribe and the TTGC.  Gaughan Gaming asserted that Sections 16.1(b) and 21.1 of the Management Agreement provided a waiver of Tribal sovereign immunity for the State Court to hear its action for injunctive relief against the Tribe and the TTGC.

The Tribe does not dispute that the Management Agreement contains a waiver of tribal sovereign immunity for Gaughan Gaming to seek certain injunctive relief, but those waiver provisions are limited and do not clearly bestow the State Court with authority to adjudicate a dispute against the Tribe.  Nothing in Sections 16.1(b) and 21.1 of the Management Agreement permit Gaughan Gaming to seek injunctive against the Tribe in any State court.

Section 21.1 clearly permits Gaughan Gaming to seek injunctive relief in a "civil court of competent jurisdiction", and Gaughan Gaming relies on the Oklahoma Supreme Court case of *Griffith v. Choctaw Casino of Pocola*, 2009 OK 51, 230 P.3d 488 for its proposition that the State Court is a court of competent jurisdiction to adjudicate the claims against the Tribe and the TTGC.[2]  Gaughan Gaming's proposition is flawed for several reasons.

First, the *Griffith* decision involved a tort claim brought by a patron of a Tribal casino, and the Oklahoma Supreme Court's decision was based on an analysis of whether a State court could adjudicate the dispute under the provisions of a Tribal-State Gaming Compact.  *Griffith* did not involve a dispute between a Tribe and its Management Contractor.

Second, although the term "court of competent jurisdiction" contained in the Tribal-State Gaming Compact was interpreted by the Oklahoma Supreme Court in the *Griffith* decision

---

[2] *See* Para. 9 of Gaughan Gaming's *Emergency Motion for Temporary Restraining Order and Temporary Injunction* filed in State Court.

to include a State court, this Court has since certified arbitration awards for several Tribes and permanently enjoined State court adjudication of tort claims, effectively overruling *Griffith*.[3] Thus, by virtue of the arbitration award, and the Federal court certification of the award and permanent injunction, the term "court of competent jurisdiction" has been conclusively determined to not be a State court.

In the case at bar, the Management Agreement recognizes that Gaughan Gaming may seek injunctive relief in a "court of competent jurisdiction", but there is no definition of that term in the agreement. The term "court of competent jurisdiction" is textually ambiguous, but, in the context of the claims being asserted, it is clear that Oklahoma state courts are not the proper jurisdiction to adjudicate such claims. Not only has the Tribe not specifically authorized Gaughan Gaming to bring suit in State Court, but Oklahoma is pre-empted from asserting general civil-adjudicatory jurisdiction over Indian country lands without specific Congressional approval.[4]

The Management Agreement itself was executed by the parties on the Tribe's Indian country in Oklahoma (*see* Section 7.5.4 of the Management Agreement), which is not within State jurisdiction, and pertains to management of gaming facilities and activities situated on the Tribe's Indian country. As part of its request for relief, Gaughan Gaming seeks to gain

---

[3] U.S. District Judge Lee West has certified arbitration awards and entered permanent injunctions against State court adjudication of tort claims under the Tribal-State Gaming Compact in the following cases brought in the U.S. District Court of the Western District of Oklahoma: *Choctaw Nation of Oklahoma and Chickasaw Nation v. State of Oklahoma* (W.D. Okla. Case No. CIV-10-50-W), *Eastern Shawnee Tribe of Oklahoma v. State of Oklahoma* (W.D. Okla. Case No. CIV-450-W), and *Comanche Nation, Osage Nation, Delaware Nation and Wichita and Affiliated Tribes v. State of Oklahoma* (W.D. Okla. Case No. CIV-10-1339-W). On February 18, 2011, an arbitrator issued an award for the Tonkawa Tribe ruling that no Oklahoma state court is a "court of competent jurisdiction" within the meaning of Part 6(C) of the Tribe's gaming compact with the State of Oklahoma. The Tribe is in the process of seeking Federal court certification of the award.

[4] With the adoption of Public Law 280 (Act of Aug. 15, 1953, ch. 505, 67 Stat. 588), Congress authorized five States to possess Indian country criminal and civil-adjudicatory jurisdiction, and provided the exclusive method for other States to acquire such jurisdiction. Public Law 280 pre-empts Oklahoma courts asserting Indian country criminal and civil-adjudicatory jurisdiction unless otherwise specifically authorized by Congress. Oklahoma is not a Public Law 280 State.

possession and management control of the casinos located in Indian country.  Thus, Gaughan Gaming's claims arise and are based on activities situated on Tribal lands, over which the State of Oklahoma does not possess jurisdiction.[5]   Nothing in the Management Agreement specifically authorizes the State Court to adjudicate Gaughan Gaming's action for injunctive relief; nor has Congress specifically authorized the State Court with civil-adjudicatory jurisdiction to hear Gaughan Gaming's claims which are based on activities that occurred and are occurring on the Tribe's Indian country.  The waiver of immunity relied upon by Gaughan Gaming is not applicable to the State Court.

On the other hand, the Tribe has its own Tribal court which does possess civil-adjudicatory jurisdiction over claims that arise within the Tribe's Indian country.  Notwithstanding the specific dispute resolution provisions in the Management Agreement, any waiver of Tribal sovereign immunity in the Management Agreement for a matter to be heard in a "court of competent jurisdiction", without anything more, should be interpreted as to be applicable only in the Tribe's courts.[6]

Tribal sovereign immunity also precludes Gaughan Gaming's request for a temporary restraining order or any other affirmative relief in this Court.  The Tribe's removal to federal court does not waive immunity. *See, e.g., Ingrassia v. Chicken Ranch Bingo and Casino*, 676 F.Supp.2d 953, 959-60 (E.D. Cal. 2009) (finding that Indian tribes, like foreign sovereigns, do not waive sovereign immunity merely by removing to federal court).  Gaughan Gaming cites to no authority in its emergency motion [Docket No. 8] for this Court to exercise jurisdiction over the

---

[5]  The Oklahoma Enabling Act required Oklahoma to disclaim jurisdiction over Indian lands as a condition of achieving Statehood. *See, e.g., Washington v. Yakima Indian Nation*, 439 U.S. 463, 481 & n.25 (1979); *cf.* OKLA. CONST. art. I, § 3.

[6]  Moreover, the Tribe, in the Management Agreement, has expressed that State court is not acceptable for the resolution of disputes that arise under the Management Agreement, e.g., in Section 20.3 provides that "[t]he arbitrator shall apply the commercial rules of arbitration . . . provided that reliance on said rules shall not be construed as consent to suit by the Tribe in courts of the State of Oklahoma or in the courts of any other State or as expanding in any manner the Tribe's limited waiver of sovereign immunity set forth in Article 16 of this Agreement. (emphasis in original)

Tribe and the TTGC, and there is no contention by Gaughan Gaming that Tribal sovereign immunity has been waived by the Tribe or expressly abrogated by Congress.

Although the Management Agreement does contain a limited waiver of sovereign immunity for the enforcement of an arbitration award, the request by Gaughan Gaming for a temporary restraining order is not based on any arbitration award.  Any other provision of the Management Agreement that purports to waive immunity in Federal court, other than the enforcement of an arbitration award, is not enforceable because parties to a contract cannot bestow the Federal courts with a basis for subject matter jurisdiction if none exists.  Gaughan Gaming's request for a temporary restraining order is not based on Federal question jurisdiction, and diversity jurisdiction is lacking because an Indian tribe (or a governmental arm of the Tribe) is not a citizen of any state for purposes of diversity jurisdiction. *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993).

## B.     Gaughan Gaming Has Failed To State A Claim Upon Which Relief May Be Granted.

Prior to filing its action in the State Court, Gaughan Gaming was already involved with litigating its dispute with the Tribe in an arbitration matter being administratively handled by the American Arbitration Association; further, Gaughan Gaming is in the middle of an administrative hearing matter with the TTGC concerning the ability of Gaughan Gaming to maintain its license to manage the Tribe's gaming activities.  Now, by virtue of filing its action in State Court, Gaughan Gaming seeks to disrupt these proceedings and obtain relief by court order now that it otherwise might not be entitled to at the conclusion of arbitration or license proceedings before the TTGC.  Nothing in Federal and Tribal law, and nothing in the Management Agreement, authorizes Gaughan Gaming to maintain possession and management control of the Tribe's casinos if its gaming license is suspended or revoked.  In fact, under Federal law, Gaughan Gaming cannot legally manage the casinos if it does not possess a valid gaming license issued by the Tribe.  Unless and until Gaughan Gaming's gaming license is fully restored, no court can grant Gaughan Gaming with the right to possess and maintain the casinos

as manager.

The gaming activity at the Tribe's casinos and the management by Gaughan Gaming at those casinos are governed by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"). The federal standards established pursuant to the requirements of the IGRA are located in 25 C.F.R. Parts 502-577. These regulations provide a complex regulatory scheme for Indian gaming, which includes certain provisions whereby Indian gaming licensing is regulated by two separate sovereign entities: the National Indian Gaming Commission ("NIGC") and tribal gaming commissions. IGRA requires tribes to submit tribal gaming resolutions and ordinances regulating the conduct of Class II and Class III gaming on Indian lands to the NIGC Chairperson for review and approval. 25 U.S.C. § 2710 (b)(2); (d)(1)(A)(ii). IGRA mandates that tribal gaming ordinances include specific provisions for licensing primary management officials and key employees. Among other requirements, IGRA specifically requires tribal gaming licensing regulations to include:

> "[A] standard whereby any person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming shall not be eligible for employment."

25 U.S.C. § 2710 (b)(2)(F)(ii)(II).

Thus, under the IGRA, tribes are required to license and regulate management contractors and their employees. The Tribe is expressly barred from employing unlicensed management contractors and employees of management contractors. Consequently, in this case, federal law clearly preempts claims by Gaughan Gaming and their employees to possession, custody, and control of the gaming facilities until it has a valid gaming license from the Tribe. The license of Gaughan Gaming's sole shareholder has been suspended by the Tribe's Gaming Commission pending final adjudication of the licensing proceeding – a proceeding which Gaughan Gaming is further delaying by asking the State Court and this Court to enjoin. Thus, in effect, in asking for this Court to reinstate possession of the gaming facilities to Gaughan

Gaming, Gaughan Gaming is asking this Court to award relief to itself that violates federal law and interferes with the tribal administrative process mandated by IGRA.

Further, to the extent Gaughan Gaming is alleging any possessory rights to the gaming facilities, IGRA bars Gaughan Gaming from possessing a proprietary interest in the gaming properties. IGRA expressly requires tribal gaming ordinances to contain provisions ensuring that tribes have the "sole proprietary interest and responsibility for the conduct of Indian gaming activity." 25 U.S.C. § 2710 (b)(2)(A). IGRA specifically states that "[n]o management contract for the operation and management of a gaming activity …. shall transfer or, in any other manner, convey any interest in land or other real property, unless specific statutory authority exists and unless clearly specified in writing in said contract." 25 U.S.C. § 2711(g). Consequently, any request for relief by Gaughan Gaming that would have the effect of removing the sole proprietary interest and responsibility for the conduct of gaming activity from the Tribe must fail as a matter of law.

Gaughan Gaming is not seeking relief on the basis that the Tribe or the TTGC is attempting to assert jurisdiction over its objections; indeed, as a licensee, Gaughan Gaming explicitly consented to the regulatory authority of the TTGC on licensing matters. Further, nothing in the IGRA or NIGC regulations provide Gaughan Gaming with a private right of action against the Tribe or the TTGC on issues regarding its gaming license. *See, e.g., Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1049 (11th Cir. 1995) (finding plaintiff failed to state a claim against tribe for alleged failure to comply with IGRA's licensing requirements because no implied cause of action in IGRA.).

Nothing in the pleadings and motion for injunctive relief filed in the State Court by Gaughan Gaming provides any authority for the State court to grant relief to Gaughan Gaming that it seeks. Further, there is no authority for this Court to issue any similar relief to Gaughan Gaming in this removal action. As a matter of law, "Federal courts should abstain when a suit sufficiently implicates Indian sovereignty or other important interests." *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1542 (10th Cir. 1995). The Tribe's arbitration is ongoing,

and any determination as to damages (or even requests for injunctive relief for that matter) as to the rights of Gaughan Gaming under the Management Agreement will be addressed in that forum.  The TTGC hearings are an important internal Tribal administrative matter, and there is no authority for the State Court or this Court to infringe on that process.  Gaughan Gaming cannot state a claim upon which relief can be granted in the State Court and in this Court, and, as such, its action must be dismissed.

## CONCLUSION

For the forgoing reasons, Defendant Tonkawa Tribe of Oklahoma respectfully requests this Court dismiss this case under Fed. R. Civ. P. 12(b)(1) and under Fed. R. Civ. P. 12(b)(6). The Tribe further requests the Court deny and dismiss Gaughan Gaming's *Emergency Motion to Set Immediate Hearing on Motion for Temporary Restraining Order* [filed in this action as Docket No. 8] on the basis that the Tribe asserts its sovereign immunity from any affirmative relief requested by Gaughan Gaming.  The Tribe further requests an award of attorney's fees and costs and any other relief consistent with this motion, legal or equitable, available under law.

Respectfully submitted,

*/s/ O. Joseph Williams*

Gary S. Pitchlynn, OBA #7180
O. Joseph Williams, OBA #19256
Stephanie Moser Goins, OBA #22242
PITCHLYNN & WILLIAMS, PLLC
P.O. Box 427
Norman, Oklahoma 73070
Telephone: (405) 360-9600
Facsimile: (405) 447-4219
Email: gspitchlynn@pitchlynnlaw.com
         jwilliams@pitchlynnlaw.com
         smgoins@pitchlynnlaw.com

ATTORNEYS FOR TONKAWA TRIBE
OF OKLAHOMA

## CERTIFICATE OF SERVICE

I certify that on the 28th day of March, 2011, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jimmy Goodman
Regan Strickland Beatty
CROWE & DUNLEVY, PC
20 North Broadway, Ste 1800
Oklahoma City, OK  73102-8273

D. Michael McBride III
CROWE & DUNLEVY, PC
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK  74103-3313

*Attorneys for Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC*

Ezekiel L.N. Fletcher
ROSETTE & ASSOCIATES, PC
Boji Tower
124 West Allegan St.
Suite 1400
Lansing, MI 48933

Roger Wiley
ROSETTE & ASSOCIATES, PC
14 Crooked Oak Lane
McAlester, OK  74501

*Attorneys for Co-Defendants Tonkawa Tribal Gaming Commission*

*/s/ O. Joseph Williams*
_____
O. JOSEPH WILLIAMS