UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GAUGHAN GAMING - NATIVE LIGHTS, LLC, and GAUGHAN GAMING - TONKAWA, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: CIV-11-330-HE |
| THE TONKAWA TRIBE OF INDIANS OF OKLAHOMA and THE TONKAWA TRIBAL GAMING COMMISSION, | ) ) ) ) ) | |
| Defendants. | ) | |

## JURISDICTIONAL BRIEF OF PLAINTIFFS

Plaintiffs, Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC (collectively "Gaughan Gaming"), hereby submit their brief regarding the question of federal jurisdiction raised by the Court.  Gaughan Gaming submits that there is no basis for federal jurisdiction pursuant to the doctrine of sovereign immunity or pursuant to the Federal Arbitration Act.  However, there appears to be a basis for federal question jurisdiction pursuant to the Indian Gaming Regulatory Act, which broadly applies to questions related to the governance of Indian Tribes.

If this Court finds that it has jurisdiction, Gaughan Gaming respectfully requests that it enter Gaughan Gaming's requested temporary restraining order enjoining the Tonkawa Tribal Gaming Commission's (the "TTGC") summary proceedings on Gaughan Gaming's Management Agreement Licenses and set a schedule for disposition of this lawsuit.  In the absence of jurisdiction, Gaughan Gaming requests that the Court remand

the case as quickly as possible so that Gaughan Gaming may secure the appropriate temporary relief from the state court prior to the subject summary proceedings, which are scheduled to take place at 10:00 a.m. this Thursday, March 31, 2011.

## <u>Background</u>

Gaughan Gaming and the Tonkawa Tribe (the "Tribe") are parties to Management Agreements approved by the Chair of the National Indian Gaming Commission, as required by the Indian Gaming Regulatory Act ("IGRA"), and authorized by the TTGC. Pursuant to the Management Agreements, Guaghan Gaming manages the Tribe's Native Lights Casino and Tonkawa Casino (the "Casinos"). The Tribe has waived its sovereign immunity with respect to certain disputes, and such disputes are subject to arbitration.

A dispute arose under the Management Agreements (the "Dispute"), and, on August 17, 2010, Gaughan Gaming submitted the Dispute to arbitration. The Management Agreements provide that Gaughan Gaming may remain in possession and control of management of the Casinos pending resolution of a dispute. Notwithstanding this provision, on September 28, 2010, without cause or notice, the Tribe forcibly removed Gaughan Gaming and its employees from the Casinos.

Further, acting in concert with the Tribe, the TTGC summarily suspended Gaughan Gaming's Licenses, without notice or other due process required by the TTGC's own Gaming Regulations. The TTGC, acting by and through its Executive Director, contemporaneously filed a complaint before the TTGC, seeking permanent revocation of Gaughan Gaming's Licenses, which initiated a disciplinary hearing proceeding under the

TTGC Gaming Regulations.   Gaughan Gaming appealed the TTGC's summary suspension of its Licenses, but on February 28, 2011, the TTGC upheld its decision.

On March 11, 2011, the TTGC filed a motion for summary judgment in the disciplinary proceeding, seeking permanent revocation of Gaughan Gaming's Licenses, and the motion has been set for hearing on March 31, 2011.  The Gaming Regulations do not provide for summary resolution of a licensure issue.  In fact, they require adjudication of such pursuant to a fact-finding hearing at which Gaughan Gaming is entitled to, among other substantial rights of due process, representation by counsel, issuance of subpoenas, and cross-examination of witnesses.

On March 22, 2011, Gaughan Gaming filed a lawsuit in Kay County, seeking to enjoin removal of Gaughan Gaming as manager of the Casinos and to enjoin revocation of Gaughan Gaming's Licenses, pending resolution of the Dispute.  Further, Gaughan Gaming sought a temporary restraining order to prevent the TTGC from proceeding summarily against it.  That application was set for hearing on Friday, March 25, 2011.

The Tribe removed the lawsuit to this Court on March 24, 2011, asserting federal question jurisdiction.  The Tribe asserts three bases for federal question jurisdiction:  (1) tribal sovereign immunity, (2) the Federal Arbitration Act, and (3) the Indian Gaming Regulatory Act.  *See* Notice of Removal, ¶3.  At the hearing held March 28, 2011, on Gaughan Gaming's request for a temporary restraining order, the Court asked the parties to brief the question of whether it has jurisdiction over the lawsuit.

## I.   TRIBAL SOVEREIGN IMMUNITY IS NOT A BASIS FOR FEDERAL QUESTION JURISDICTION

The Tribe asserts, as one basis for federal question jurisdiction, the doctrine of tribal sovereign immunity.   *See* Notice of Removal, ¶3.   The Tribe states that because Gaughan Gaming alleges the Tribe waived its sovereign immunity, which is a matter of federal law, this lawsuit arises under federal law for purposes of federal question jurisdiction.   *See* Notice of Removal, ¶¶ 13-14.

It is well-settled that the doctrine of sovereign immunity, while a matter of federal law, is not a basis for federal question jurisdiction:

> [I]t has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law. . . .   The jurisdictional question in this case is not affected by the fact that tribal immunity is governed by federal law.

*Oklahoma Tax Com'n v. Graham*, 489 U.S. 838, 841 (1989).   *See also State of Okl. ex rel. Oklahoma Tax Com'n v. Wyandotte Tribe of Oklahoma*, 919 F.2d 1449, 1451 (10th Cir. 1990) ("We believe that the Court's decision in Graham forecloses any argument that the sovereign immunity of the Tribe is a sufficient question of federal law to allow removal of the case to federal court.").

Even assuming the Tribe raises sovereign immunity as a defense, it is not a basis for federal question jurisdiction in this Court.

## II.   THE FEDERAL ARBITRATION ACT IS NOT A BASIS FOR FEDERAL QUESTION JURISDICTION

The Tribe also asserts that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), is a basis for federal question jurisdiction in this Court.   *See* Notice of Removal,

¶3.  The Tribe assumes that the FAA is jurisdictional in nature, as a body of federal substantive law, and that the lawsuit arises under it because Gaughan Gaming alleges a dispute under the Management Agreement that is subject to arbitration.  *See* Notice of Removal, ¶¶ 17-18.

The FAA, although it is federal substantive law, does not create federal question jurisdiction:

> As for jurisdiction over controversies touching arbitration, the Act does nothing, being "something of an anomaly in the field of federal-court jurisdiction" in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.

*Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-582 (2008) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n. 32 (1983) ).  *See also Southland Corp. v. Keating*, 465 U.S. 1, n.9 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise."); *Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, n.4 (10th Cir. 2004) ("The FAA alone cannot confer subject matter jurisdiction on the federal courts without an independent jurisdictional basis.").

Even assuming the FAA applies and is at issue in this lawsuit, it does not confer jurisdiction on this Court.

## III.   THE INDIAN GAMING REGULATORY ACT MAY PROVIDE A BASIS FOR FEDERAL QUESTION JURISDICTION

Finally, the Tribe asserts that federal question jurisdiction is established under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2711 *et seq.* ("IGRA").  Specifically, the

Tribe asserts that this lawsuit arises under IGRA, a federal scheme regulating Indian gaming, because the lawsuit involves Management Agreements subject to approval pursuant to IGRA.  *See* Notice of Removal, ¶¶ 15-16.

It appears that IGRA may be a proper basis for federal question jurisdiction. Federal courts have recognized that IGRA is one of those federal statutes with such extraordinary, "complete" preemptive power as to convert a state law claim into a federal one for purposes of the well-pleaded complaint rule, creating federal question jurisdiction.  *See Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 543-548 (8th Cir. 1996); *Muhammad v. Comanche Nation Casino*, 742 F. Supp. 2d 1268, 1275 (W.D. Okla. 2010).

The scope of IGRA complete preemption is fairly broad – it encompasses any claim that would interfere with a tribe's ability to govern gaming.  *Gaming Corp.*, 88 F.3d at 548-549; *Muhammad*, 742 F. Supp. 2d at 1268.  Courts have included within these parameters claims that directly affect or interfere with a tribe's ability to conduct its own licensing process and claims involving disputes under tribal management agreements.

In *Gaming Corp.*, for example, a dispute brought by a contractor under a tribal management agreement – alleging a law firm representing the tribe violated state law during the tribal casino management licensing process – was properly removed to federal court on the basis of federal question jurisdiction under IGRA.  During the licensure process, the tribal gaming commission found that the contractor had violated the terms of its provisional license; therefore, the commission denied permanent licensure to the contractor.  The thrust of the contractor's complaint against the law firm was that it "had

made the licensing process unfair by intentionally or negligently making the management companies appear unsuitable." 88 F.3d at 540.

In holding that IGRA completely preempts state law claims involving the issue of licensure under a casino management agreement, the court in *Gaming Corp.* found that the question of licensing is of central concern to IGRA:

> The tribal licensing process is required and regulated by IGRA. Tribes must submit the results of the required background checks to the NIGC. A description of that licensing process must be included in the tribal ordinance or resolution necessary to begin class II and class III gaming. That ordinance or resolution must in turn be approved by the NIGC.

*Id.* at 549. As such, "[a]ny claim which would directly affect or interfere with a tribe's ability to conduct its own licensing process should fall within the scope of complete preemption." *Id.*

In *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030 (11th Cir. 1995), the court likewise found federal question jurisdiction over a dispute akin to the one before this Court. *Tamiami* involved a dispute between a contractor and a tribe over the tribe's removal of the contractor's management control and the tribe's attempt to revoke the contractor's license. The contractor alleged the tribe had breached the management agreement. In finding the dispute arose under IGRA for purposes of federal question jurisdiction, the court noted that the management agreement incorporated by operation of law, if not by reference, the provisions of IGRA. *Id.* at 1047.

And, in *Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1140 (10th Cir. 2004), the Tenth Circuit noted that IGRA provided a basis for federal question jurisdiction over a lawsuit similar to the one at bar – one involving a contractor's attempt

to secure, by arbitration, a tribe's compliance with a management contract. Because the management contract was subject to IGRA, IGRA was implicated sufficiently to create jurisdiction. *Id.* at n.4 ("In this case, the Tribe's district court complaint was based in part on the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq., and 25 U.S.C. § 81. Thus, the district court had jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).").

This lawsuit, as set forth above, arises out of a dispute under the Management Contract between Gaughan Gaming and the Tribe and TTGC licensure proceedings. As such, it arguably falls within the preemptive scope of IGRA.

## CONCLUSION

Neither the doctrine of sovereign immunity nor the FAA provide a basis for federal jurisdiction. However, it may be that this Court has jurisdiction by virtue of the broad preemptive power of IGRA, which inherently governs the Management Agreements that form the basis of the dispute at issue. To the extent this Court has jurisdiction of the lawsuit, Gaughan Gaming respectfully reiterates its urgent request that the Court enter a temporary restraining order enjoining TTGC's summary proceedings on Gaughan Gaming's Licenses and set a schedule for disposition of Gaughan Gaming's lawsuit for injunctive relief.

Respectfully submitted,

/s/ Jimmy Goodman

Jimmy Goodman, OBA #3451

Regan Strickland Beatty, OBA #20349

-Of the Firm-

CROWE & DUNLEVY
A Professional Corporation
20 North Broadway
Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)

-And-

D. Michael McBride III, OBA # 15431

-Of the Firm-

CROWE & DUNLEVY
a Professional corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma  74103-3313
 (918) 592-9800
 (918) 592-9801 (Facsimile)


ATTORNEYS FOR PLAINTIFFS
GAUGHAN GAMING-NATIVE LIGHTS,
LLC AND GAUGHAN GAMING-
TONKAWA, LLC


## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2011, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gary S. Pitchlynn
O. Joseph Williams
Stephanie Moser Goins

Pitchlynn & Williams, PLLC
124 East Main Street
P.O. Box 427
Norman, Oklahoma 73070
Email: gspitchlynn@pitchlynnlaw.com
jwilliams@pitchlynnlaw.com
smgoins@pitchlynnlaw.com

Roger F. Wiley
Rosette & Associates PC
P.O. Box 1667
McAlester, Oklahoma 74502
Email:  rwiley@rosettelaw.com

/s/ Jimmy Goodman
Jimmy Goodman