## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

GAUGHAN GAMING - NATIVE )
LIGHTS, LLC, and )
GAUGHAN GAMING - TONKAWA, )
LLC, )
)
             Plaintiffs, )    NO. CIV-11-330-HE
)
THE TONKAWA TRIBE OF )
INDIANS OF OKLAHOMA and )
THE TONKAWA TRIBAL GAMING )
COMMISSION, )
)
             Defendants. )

## ORDER

Plaintiffs Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC (collectively "Gaughan Gaming") filed this action in Kay County District Court against the Tonkawa Tribe of Indians of Oklahoma ("Tribe") and the Tonkawa Tribal Gaming Commission ("TGC"), seeking a temporary restraining order and temporary injunction. Defendants removed the action to federal court and plaintiffs requested an immediate hearing on their request for a temporary restraining order. On March 28, 2011, a hearing was held, during which the court *sua sponte* raised the issue of subject matter jurisdiction. The parties were directed to file supplemental briefs addressing the issue. Having considered the parties' submissions and the record before it, the court concludes it has subject matter jurisdiction to consider plaintiffs' claims. It finds, however, that plaintiffs are not entitled to the temporary restraining order they seek.

## Background

Since 2007, plaintiffs managed two casinos on tribal land pursuant to management agreements they entered into with the Tribe.[1] Contractual disputes arose in early 2010, which the parties submitted to arbitration. In late September, 2010, the TGC, an agency of the Tribe authorized to license and regulate trial gaming operations, suspended plaintiffs' gaming licenses and removed plaintiffs from their positions as managers of the casinos. The TGC also filed a complaint seeking permanent revocation of plaintiffs' licenses. The complaint was stayed pending a hearing on plaintiffs' appeal of the order of suspension. After that order was upheld, the stay was lifted. The Executive Director of the TGC then filed a motion for summary judgment requesting permanent revocation of plaintiffs' licenses, which is set for hearing on March 31, 2011. On March 22, 2011, plaintiffs filed this lawsuit in state court.

In their petition (and their amended complaint, since filed in this court) plaintiffs allege defendants have breached the management agreements by taking control of the casinos, have improperly suspended their gaming licenses, and, in violation of Tribal regulations, intend to determine whether plaintiffs' licenses should be permanently revoked on the basis of a summary judgment motion. They seek an injunction that will allow them to retain their licenses and manage the casinos until the arbitration proceeding is concluded.

The March 31 hearing is the basis for the requested temporary restraining order.

---

[1]*The agreements were approved by the Chairman of the National Indian Gaming Commission, as required by the Indian Gaming Regulatory Act.*

Plaintiffs claim the Tribal Gaming Regulations, which govern the disciplinary procedure, require an evidentiary hearing for a license revocation.   Plaintiffs argue that the TGC's attempt to revoke their licenses through a summary proceeding is not authorized by the Regulations and should be enjoined.   Plaintiffs rely on § 16.1(b) of the Management Agreements which, they assert, authorizes them to challenge and/or seek appeal or review of the TGC's decisions or procedures.[2]

Analysis

Defendants removed the case on the basis of federal question jurisdiction, which "exists for all claims arising under the Constitution, laws, or treaties of the United States." Von Loh v. Synthes, Inc., 106 Fed.Appx. 665, 667 (10th Cir. 2004) (unpublished) (internal quotations omitted).[3]   The court sua sponte raised the issue of subject matter jurisdiction because it questioned whether plaintiffs' claims arose under federal law. *See* Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1276 (10th Cir. 2001) ("A federal court has an independent obligation to examine its own jurisdiction.").

Defendants, as the parties invoking the court's jurisdiction, bear the burden of establishing that removal is proper. *See* Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001).   "[A]ll doubts are to be resolved against removal." *Id.* Defendants

---

[2]*That section is in Article 16 of the Management Agreements, which pertains to the Tribe's limited waiver of sovereign immunity.*

[3]*Pursuant to 28 U.S.C. § 1441(b) an action may be removed if it "originally could have been filed in federal court." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).*

assert in the Notice of Removal that the action arises under the Indian Gaming Regulatory Act ("IGRA"), the Federal Arbitration Act ("FAA") and the "federal common law doctrine of tribal sovereign immunity." Notice of Removal p. 2.   However, in their supplemental briefs defendants rely exclusively on the IGRA as the basis for subject matter jurisdiction.[4]

Federal question jurisdiction usually depends on the contents of a well-pleaded complaint – what is "presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc., 482 U.S. at 392. Under the well-pleaded complaint rule, a case arises under federal law if the  complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. " Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotations omitted).   However, there is a narrow exception to the rule – the "complete preemption doctrine." Beneficial Nat't Bank v. Anderson, 539 U.S. 1, 5 (2003). It is upon that exception that defendants now principally rely to establish jurisdiction.

"When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. Based on the statutory language of the IGRA and

---

[4]*In its supplemental brief, the Tribe clarified that it was not asserting that the defense of sovereign immunity, by itself, provided a basis for subject matter jurisdiction. Reliance on the doctrine of sovereign immunity as a basis for federal jurisdiction would be misplaced.  While "[t]ribal immunity may provide a federal defense" to plaintiffs' claims, "it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law. " Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 841 (1989).  Jurisdiction cannot be founded on the FAA either, as plaintiffs' claims are not based on and do not involve the pending arbitration proceeding.*

4

its legislative history, the Eighth Circuit concluded in <u>Gaming Corp. of America v. Dorsey & Whitney</u>, 88 F.3d 536, 547 (8th Cir.1996) that the IGRA "has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule." The court held that "[a]ny claim which would directly affect or interfere with a tribe's ability to conduct its own licensing process should fall within the scope of [the IGRA's] complete preemption." *Id.* at 549.[5]

Although the question of the IGRA's preemptive effect is not free from doubt, the court finds the Eight Circuit's analysis in <u>Gaming Corp.</u> to be persuasive.[6]   Plaintiff's challenge to the TGC's potential revocation of their licenses through a summary procedure "would directly affect or interfere with [the] tribe's ability to conduct its own licensing process." <u>Gaming Corp.</u>, 88 F.3d at 549.[7] As the Eight Circuit emphasized in <u>Gaming Corp</u>: "The tribal licensing process is required and regulated by IGRA. . . . The question of licensing is therefore of central concern to the federal statute and Congress unmistakably intended that tribes play a significant role in the regulation of gaming.  *Id.* (Internal quotations omitted).  The court therefore concludes that a federal question is presented by plaintiffs' petition, sufficient to support removal to, and jurisdiction in, this court.  <u>Gaming</u>

---

[5]*No other circuit court appears to have directly addressed the issue.*

[6]*Plaintiffs concur with this view, albeit somewhat tepidly.*

[7]*As the court concludes subject matter jurisdiction exists as to plaintiffs' claim premised on the pending licensing proceeding, it does not have to determine whether their claim that defendants breached the management agreement by removing them as managers of the casinos also falls within IGRA's protective structure.*

Corp., 88 F.3d at 548-50; *see* Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1046-47 (11th Cir. 1995) (district court had subject matter jurisdiction over claim "based directly on IGRA and the NIGC's regulations," that Tribe had abused the licensing authority conferred by the statute and the regulations by refusing to license the management contractor). The court further finds that the doctrine of tribal sovereign immunity does not present a barrier to the relief plaintiffs seek here, as the management agreements include a specific waiver of sovereign immunity "[f]or the purposes of allowing the Manager to take any and all actions necessary to enforce the provisions of [the management agreement] pursuant to the alternative dispute resolution procedures ... [and] to take any and all actions necessary to contest, or seek appeal or review of, the decisions or procedures of the Tribal Gaming Commission ...." Amended and Restated Management Agreement, Article 16.1(a), (b).

As the court has determined subject matter jurisdiction exists, the question becomes whether plaintiffs have demonstrated a basis for temporary injunctive relief. The specific relief sought in connection with plaintiffs' request for a temporary restraining order (as opposed to the broader injunctive relief sought in the amended complaint) seeks to stop the license revocation proceedings now pending before the TGC, in particular the hearing scheduled for March 31, 2011. As the request for a temporary restraining order essentially seeks to preserve plaintiffs' licensee status pending further proceedings here, the request seeks to preserve the status quo and the "heightened showing" standard required for

6

mandatory injunctions is not implicated. *See* Roda Drilling Co. v. Siegal, 552 F.3d 1203, 1208-09 (10th Cir. 2009).[8]

A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in the movant's favor, and (4) that the injunction is in the public interest. Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010) (citing Roda Drilling, supra). Plaintiffs assert that the present circumstances satisfy these requirements because the TGC is about to revoke plaintiffs' gaming licenses in a fashion that violates both the management agreements between the parties and the TGC's own regulations. Specifically, plaintiffs argue the TGC will, at the hearing scheduled for March 31, consider and grant the summary judgment motion filed by the Tribe and now pending before the TGC. Plaintiffs argue that a summary judgment process is not proper in this context, that a hearing or trial on the merits is required, and that the TGC has, by its refusal to issue subpoenas sought by plaintiffs, thwarted its efforts to prepare for the necessary hearing or to otherwise respond to the Tribe's motion.

The court concludes it is unnecessary to conduct a detailed analysis of all four of the standards required for issuance of a temporary injunction/TRO, as at least one standard —

---

[8]*In determining what is the "status quo," the court looks to "the last uncontested status between the parties which preceded the controversy...." Schrier v. Univ. of Colorado, 427 F.3d 1253, 1260 (10th Cir. 2005). While the status of plaintiffs has been in dispute between the parties for many months, including a previous suspension by the TGC of plaintiffs' licenses, the court views the "status quo," for purposes of the relief sought here, as involving plaintiffs in a licensed (although suspended) status.*

the requirement that the movant show a significant risk of irreparable harm — has not been met. In order to meet this requirement, a plaintiff must demonstrate "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." Roda Drilling Co., 552 F.3d at 1210 (citing Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003)). "Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden." *Id.*

Here, plaintiffs' argument is essentially that the TGC is going to, at the March 31 hearing, reject plaintiffs' objections to a summary procedure and grant the summary judgment motion of the Tribe. That argument is based on the history of this dispute, which has previously resulted in the TGC's suspension of plaintiffs' licenses, the fact that the TGC's Executive Director has filed a motion for summary judgment, and the fact that the Executive Director has refused plaintiffs' requests for issuance of subpoenas to allow it to prepare for the hearing or otherwise defend against the Tribe's motion.

While there is, of course, no way to determine now with certainty what the TGC will do tomorrow, the court concludes plaintiffs' submissions do not show, beyond the level of speculation, that the TGC will take some action contrary to plaintiffs' rights. The TGC has entered a scheduling order setting the March 31 hearing. (Scheduling Order entered March 15, 2011, plaintiffs' hearing exhibit 12). That order notes that motions filed by both parties are pending, directs the parties to appear on March 31 "for consideration of the above listed

8

motions," and sets a deadline for plaintiffs' response to the summary judgment motion. There is nothing in the order which indicates the TGC will grant the Tribe's motion or that it has determined that the license revocation issues can be or should be determined by such a motion as opposed to some further or different procedure. There is nothing in the TGC's order to suggest that it will necessarily do anything other than hear argument on the pending motions. It may conclude that plaintiffs' objections to a summary procedure are valid and proceed as plaintiffs suggest. Indeed, the parties' submissions indicate that, in connection with the earlier license suspension proceedings, the Commission heard testimony from witnesses and conducted a hearing or trial not unlike what plaintiffs seek to assure here.

To be sure, the refusal of the Executive Director to issue subpoenas is troubling and TGC counsel's somewhat lame explanation at the hearing for that refusal was unpersuasive.[9] However, as noted above, there is nothing in the formal acts of the Commission to suggest that it has adopted, or will adopt, a summary procedure in derogation of plaintiffs' rights or that, if it did, it would grant the summary judgment motion now pending before it.[10] Further, given the persons to whom the subpoenas were directed,[11] there may well be preliminary

---

[9]*Counsel suggested the Executive Director was not the proper person from whom to request the subpoenas and that plaintiffs should have tried to locate the chairman of the Commission somewhere, or perhaps locate and make the request to some staff member other than the Executive Director.*

[10]*Based on the submissions to this court, it appears highly unlikely that the summary judgment motion could or should be granted based on any standard with which this court is familiar.*

[11]*Some of the requested subpoenas were directed to tribal officers.*

issues of privilege or otherwise which should be addressed before issuance of subpoenas.

In sum, the court concludes that, while plaintiffs' concerns are understandable in light of the past history of this dispute,[12] they have not submitted evidence sufficient to establish a likelihood of the TGC taking steps that will cause injury to them.[13] There is no reason, on the present showing, to conclude that the TGC will do other than make a good faith effort to apply the applicable law and its own rules to any determination it must make.  The Commission will presumably be aware that it is in the best interest of the tribal gaming operation, and the Tribe generally, for others who deal with tribal governmental structures — whether NIGC regulators or entities entering into commercial arrangements — to have confidence in the fairness and propriety of tribal regulatory actions.

The motion for temporary restraining order [Doc. #1, exhibit 3] is DENIED.

**IT IS SO ORDERED**.

Dated this ___*30*___ day of *March* 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[12]*The Tribe's forced eviction of plaintiffs from control and operation of the casinos, arguably contrary to the plain terms of the management agreements, and the relationship between the Tribe and the TGC raise potential questions.*

[13]*Plaintiffs urge that any injury to them would be irreparable and not subject to being remedied by a damages recovery, due to the potential impact on their licensing status in other jurisdictions.  The court need not resolve any question in that regard as the issue here turns on whether there is a non-speculative basis for the injury occurring at all (i.e. the likelihood of injury) rather than the irreparable nature of any claimed injury.*