IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GAUGHAN GAMING – NATIVE LIGHTS, LLC and GAUGHAN GAMING - TONKAWA, LLC<br><br>Plaintiffs,<br><br>v.<br><br>TONKAWA TRIBE OF OKLAHOMA and TONKAWA TRIBAL GAMING COMMISSION,<br><br>Defendants. | Case No. 5:11-cv-00330-HE |

**DEFENDANT TONKAWA TRIBE OF OKLAHOMA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND OPENING BRIEF IN SUPPORT**

COMES NOW Defendant Tonkawa Tribe of Oklahoma (the "Tribe"), by and through its counsel of record, and hereby respectfully requests this Court dismiss Plaintiffs' First Amended Complaint [Docket No. 20] under Fed. R. Civ. P. 12(b)(6) because Plaintiffs Gaughan Gaming-Native Lights, LLC ("GGNL") and Gaughan Gaming-Tonkawa, LLC ("GGT") (collectively, "Plaintiffs" or "Gaughan Gaming") have failed to state a claim upon which relief may be granted. In support of its motion, Defendant alleges and states as follows:

**ARGUMENT AND AUTHORITIES**

**I.    The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721**

In 1988, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") for the regulation of gaming activities on Indian lands. The legislative history for the IGRA clearly indicates that a significant reason for the statute is to "provide a statutory basis for operating Indian gaming to promote economic development, to shield tribes from organized crime, to assure fairness to operators and players, and to establish a Federal regulatory authority for Indian gaming to meet congressional concerns." S.Rep. No. 446, 100th Cong., 2d Sess. 15-16 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3085-86. IGRA acknowledges the sovereignty of

Tribal governments by noting that "unless a tribe affirmatively elects to have State laws and State jurisdiction extend to tribal lands, the Congress will not unilaterally impose or allow State jurisdiction on Indian lands for the regulation of Indian gaming activities." *Id.* at 5-6, 1988 U.S.C.C.A.N. at 3075.

IGRA established the National Indian Gaming Commission (the "NIGC"), which consists of a three member body, led by a Chairman, within the Department of the Interior. 25 U.S.C. § 2704(a), (b)(1).  The powers and duties of the Chairman and the NIGC, as a whole, are outlined in the IGRA.  The Chairman's powers include the authority to temporarily close a gaming facility, to issue fines, to approve tribal ordinances and resolutions, and to approve management contracts. *Id.* at §§ 2710, 2711, and 2713.  The NIGC has promulgated regulations necessary to implement IGRA, and conduct background investigations of, among others, management contractors and their employees. *Id.* at § 2706(b).  These regulations can be found at 25 C.F.R. §§ 501.1-577.15.

IGRA also requires that a tribe adopt a tribal ordinance or resolution authorizing and governing gaming activities on the Indian lands of the tribe. 25 U.S.C. § 2719.  A tribal ordinance or resolution must first be approved by the Chairman and must conform to the provisions of IGRA and the NIGC regulations. *Id.* § 2710.  The Chairman also has responsibility for approving or disapproving management contracts between an Indian tribe and contractors. Section 2711(a) of IGRA requires, as a condition of approval, that those individuals forming the proposed management entity provide detailed information about the financial background and previous gaming experience.  IGRA mandates that tribal gaming ordinances include specific provisions for licensing primary management officials and key employees.  Among other requirements, IGRA specifically requires tribal gaming licensing regulations to include:

> "[A] standard whereby any person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming shall not be eligible for employment."

25 U.S.C. § 2710 (b)(2)(F)(ii)(II).

## II. Gaughan Gaming Has Failed To State A Claim Upon Which Relief May Be Granted.

The gaming activity at the Tribe's casinos and the management by Gaughan Gaming at those casinos are governed by the IGRA and the NIGC regulations. These regulations provide a complex regulatory scheme for Indian gaming, which includes certain provisions whereby Indian gaming licensing is regulated by two separate sovereign entities: the NIGC and tribal gaming commissions.

Plaintiffs were issued a gaming license by the TTGC on or about June 28, 2007, to manage and operate gaming activities on certain Tribal lands under Tribal jurisdiction located in Kay County, Oklahoma. The TTGC is an independent regulatory body established under Tribal law. Plaintiffs were licensed to manage and operate these gaming activities in accordance with the IGRA, the Gaming Ordinance of the Tribe, as amended, the regulations and Tribal internal control systems and standards adopted by the TTGC, and the Tribe's Pre-Opening Agreement ("POA") between the Tribe and the NIGC dated July 7, 2006.

On September 11, 2007, Plaintiffs received approval by the Chairman of the NIGC to be a management contractor over the Tribe's gaming activities under terms of two separate management agreements governing the relationship between the Tribe and Gaughan Gaming[1], in accordance with the IGRA.

Under the Tribe's Gaming Ordinance, the TTGC has the authority to deny, suspend, or revoke a gaming management contractor license and to impose civil fines and penalties for, among other things, violation of, or non-compliance with, the Ordinance, Regulations, technical standards, Gaming Compact, technical standards for gaming activities, license conditions, and any lawful directives or orders of the TTGC, or for any act, action, or omission which the TTGC determines is a detriment or impediment to the casino gaming operations.

---

[1] Even though there are two separate management agreements, the terms are identical in all material respects and will be referred to, collectively, herein as the "Management Agreement."

Under the IGRA, tribes are required to license and regulate management contractors and their employees. The Tribe is expressly barred from employing unlicensed management contractors and employees of management contractors. It is clear from Plaintiffs' request for relief (pages 14-15) in their *First Amended Complaint* that they seek to be "immediately restored to its position as Manager of the [Tribal] Casinos," to have immediate "possession and management control of the [Tribal] Casinos," to have the Tribe enjoined "from any actions designed to remove [Plaintiffs]" as Manager of the Tribal Casinos, and to enjoin the Tribal Gaming Commission from performing its statutory duty to resolve issues pertaining to Plaintiffs' gaming license. However, as described above, federal law clearly preempts claims by Gaughan Gaming and their employees to possession, custody, and control of the gaming facilities until it has a valid gaming license from the Tribe.

Nothing in the IGRA or the NIGC regulations provides Plaintiffs with a right of action to have this Court grant the relief it requests. *See, e.g., Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1049 (11th Cir. 1995) (finding plaintiff failed to state a claim against tribe for alleged failure to comply with IGRA's licensing requirements because no implied cause of action in IGRA.). Even if the Management Agreement provides a waiver of sovereign immunity for Plaintiffs to seek injunctive relief during a dispute or controversy, no court can award any relief to Plaintiffs which is a direct violation of IGRA. It is undisputed in this case that the license of Gaughan Gaming's sole shareholder has been suspended by the Tribe's Gaming Commission pending final adjudication of the licensing proceeding. By asking for this Court to reinstate possession of the gaming facilities to Gaughan Gaming, Gaughan Gaming is asking this Court to award relief to itself that violates federal law and interferes with the tribal administrative process mandated by IGRA and the NIGC regulations.

Further, to the extent Gaughan Gaming is alleging any possessory rights to the gaming facilities, IGRA bars Gaughan Gaming from possessing a proprietary interest in the gaming properties. IGRA expressly requires tribal gaming ordinances to contain provisions ensuring that tribes have the "sole proprietary interest and responsibility for the conduct of Indian

4

gaming activity." 25 U.S.C. § 2710 (b)(2)(A). IGRA specifically states that "[n]o management contract for the operation and management of a gaming activity …. shall transfer or, in any other manner, convey any interest in land or other real property, unless specific statutory authority exists and unless clearly specified in writing in said contract." 25 U.S.C. § 2711(g). Consequently, any request for relief by Gaughan Gaming that would have the effect of removing the sole proprietary interest and responsibility for the conduct of gaming activity from the Tribe must fail as a matter of law.

Prior to filing its action in the State Court, Gaughan Gaming was already involved with litigating its dispute with the Tribe in an arbitration matter being administratively handled by the American Arbitration Association; further, Gaughan Gaming is in the middle of an administrative hearing matter with the TTGC concerning the ability of Gaughan Gaming to maintain its license to manage the Tribe's gaming activities. Gaughan Gaming seeks to disrupt these proceedings and obtain relief by court order now that it otherwise might not be entitled to at the conclusion of arbitration or license proceedings before the TTGC. Nothing in Federal and Tribal law, and nothing in the Management Agreement, authorizes Gaughan Gaming to maintain possession and management control of the Tribe's casinos if its gaming license is suspended or revoked. As stated, under Federal law, Gaughan Gaming cannot legally manage the casinos if it does not possess a valid gaming license issued by the Tribe. Unless and until Gaughan Gaming's gaming license is fully restored, no court can grant Gaughan Gaming with the right to possess and maintain the casinos as manager.

Gaughan Gaming cannot state a claim upon which relief can be granted in this Court, and, as such, its action must be dismissed.

## CONCLUSION

For the forgoing reasons, Defendant Tonkawa Tribe of Oklahoma respectfully requests this Court dismiss this case under Fed. R. Civ. P. 12(b)(6) because Plaintiffs Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC have failed to state a claim upon which relief may be granted. The Tribe further requests an award of attorney's fees and costs

and any other relief consistent with this motion, legal or equitable, available under law.

Respectfully submitted,

/s/ O. Joseph Williams
_____
Gary S. Pitchlynn, OBA #7180
O. Joseph Williams, OBA #19256
Stephanie Moser Goins, OBA #22242
PITCHLYNN & WILLIAMS, PLLC
124 East Main Street
P.O. Box 427
Norman, Oklahoma 73070
Telephone: (405) 360-9600
Facsimile: (405) 447-4219
Email: gspitchlynn@pitchlynnlaw.com
          jwilliams@pitchlynnlaw.com
          smgoins@pitchlynnlaw.com


ATTORNEYS FOR TONKAWA TRIBE
OF OKLAHOMA

## **CERTIFICATE OF SERVICE**

I certify that on the 11th day of April, 2011, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jimmy Goodman
Regan Strickland Beatty
CROWE & DUNLEVY, PC
20 North Broadway, Ste 1800
Oklahoma City, OK  73102-8273

D. Michael McBride III
CROWE & DUNLEVY, PC
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK  74103-3313

*Attorneys for Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC*

Ezekiel L.N. Fletcher
ROSETTE & ASSOCIATES, PC
Boji Tower
124 West Allegan St.
Suite 1400
Lansing, MI 48933

Roger Wiley
ROSETTE & ASSOCIATES, PC
14 Crooked Oak Lane
McAlester, OK  74501

*Attorneys for Co-Defendants Tonkawa Tribal Gaming Commission*

/s/ *O. Joseph Williams*
_____
O. JOSEPH WILLIAMS