**IN THE UNITED STATES COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| GAUGHAN GAMING-NATIVE LIGHTS, LLC, and GAUGHAN GAMING-TONKAWA, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-11-330-HE |
| THE TONKAWA TRIBE OF INDIANS OF OKLAHOMA and THE TONKAWA TRIBAL GAMING COMMISSION, | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT TONKAWA TRIBAL GAMING COMMISSION'S MOTION TO DIMISS PLAINTIFFS' AMENDED COMPLAINT AND OPENING BRIEF IN SUPPORT**

Comes now the Defendant, Tonkawa Tribal Gaming Commission ("TTGC"), by and through its counsel of record, and respectfully moves the Court to dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(6) because Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

Wherefore, Defendant, Tonkawa Tribal Gaming Commission moves the Court to dismiss the Amended Complaint filed by Plaintiffs herein.

A.      **BACKGROUND AND STATEMENT OF FACTS**

**PLAINTIFF'S GAMING LICENSE WAS ISSUED BY AND IS SUBJECT TO THE EXCLUSIVE REGULATORY AUTHORITY OF THE TONKAWA TRIBAL GAMING COMMISSION**

1.      The Tonkawa Tribe of Indians of Oklahoma ("Tribe") is a sovereign, federally recognized Indian Tribe as established pursuant to the Constitution of the Tonkawa Tribe of Indians of Oklahoma ("Tribal Constitution").

2.      The Tribal Committee of the Tribe ("Tribal Committee") consists of the officers elected by the tribal citizenship to "transact business and otherwise speak or act on behalf of the Tribe in all matters in which the Tribe is empowered to act" pursuant to Article V. Section 1 of the Tribal Constitution.

3.      The Tribal Committee enacted the Tribal Gaming Ordinance as an exercise of the inherent sovereignty of the Tribe and pursuant to the powers of the Business Committee delineated in Article V, Section 1 of the Tribal Constitution. The Tribal Gaming Ordinance establishes the Tonkawa Tribal Gaming Commission as a political subdivision of the Tribe (TRIBAL GAMING ORDINANCE Section 3.1) and as an arm of the Tribe created under tribal law, the TTGC is cloaked with the sovereign immunity of the Tribe.

4.      The Tribe entered into a Tribal-State Gaming Compact with the State of Oklahoma ("Compact") on January 18, 2005 in accordance with the Indian Gaming Regulatory Act of 1988 ("IGRA") (25 U.S.C. Section 2701, *et seq.*). In addition to the

authority granted to it in the Tribal Gaming Ordinance, the TTGC is vested with the authority under Part 10, Section A.8 of the Compact to "have the discretion to initiate or continue a background investigation of any licensee or license applicant and to take appropriate action with respect to the issuance or continued validity of any license at any time, including suspending or revoking such license."

5. The Tribal Committee submitted the Tonkawa Tribal Gaming Ordinances to the National Indian Gaming Commission ("NIGC") in accordance with the IGRA and the NIGC approved the Tribal Gaming Ordinance in 1997 as well as two additional amendments in 2006 and 2010. The Tribal Gaming Ordinance and Compact include detailed provisions regarding the licensing of individuals for the Tribe's gaming operations. Compliance with the Tribal Gaming Ordinance and the Compact are required in order to lawfully conduct Class III gaming on the Tribe's lands under the IGRA (codified at 25 U.S.C. Section 2710(d)).

6. The TTGC has the "final and ultimate responsibility for the conduct, review and reporting of background investigations and the making of suitability determinations" pursuant to tribal law. TRIBAL GAMING ORDINANCE at 15.8(B). The TTGC is "charged by law with the duty of continually observing the conduct of all licensees to the end that licenses shall not be held by unqualified or disqualified person or persons, whose operations are conducted in an unsuitable manner." TRIBAL GAMING

ORDINANCE at 16.17.  This section also requires each licensee to comply with all regulations or conditions imposed upon a licensee by the TTGC.

7. The TTGC is also vested with the authority to promulgate regulations "on the levying of fines and/or suspension or revocation of gaming licenses for violations of the gaming ordinance, or any other Tribal Federal, or State, if applicable, gaming regulations." TRIBAL GAMING ORDINANCE at 3.3(F)(14). The TTGC has the authority to deny, suspend, or revoke a gaming license and also impose civil fines and penalties for violation of or non-compliance with the Gaming Ordinance, Regulations, technical standards, gaming Compact, technical standards for gaming activities, license conditions, and any lawful directives or orders of the TTGC, or for any action, action, or omission which the TTGC determines is a detriment or impediment to the casino gaming operations.

8. On September 28, 2010, the TTGC Executive Director filed a Complaint with the TTGC against Gaughan Gaming requesting a revocation of Gaughan Gaming's management contractor license based upon allegations that Gaughan Gaming violated the conditions of its license as well as conditions imposed by a TTGC order issued on June 28, 2007. On September 28, 2010, the TTGC also issued a suspension order against Gaughan Gaming. The suspension order was appealed by Gaughan Gaming.

9. The TTGC held a hearing on January 26, 2010 regarding Gaughan Gaming's appeal of the suspension order. By written order dated February 28, 2011, the TTGC upheld the suspension order.

10. During the course of the proceedings regarding the suspension order, both Gaughan Gaming and TTGC filed several motions seeking relief, including motions to dismiss the Complaint and a motion for summary judgment. The TTGC held a hearing on the pending motions on March 31, 2011. On April 7, 2011, the TTGC issued a written Order denying both the motions to dismiss and motion for summary judgment. The TTGC must now make a determination on the merits of the allegations contained in the original complaint.

### B.     ARGUMENT AND AUTHORITIES

### GAUGHAN GAMING HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Before it sought relief initially in State Court, Gaughan Gaming was already involved with litigating its dispute with the Tribe in an arbitration matter within the guidelines of the American Arbitration Association. Additionally, the status of Gaughan Gaming's license must also be determined by the TTGC. By virtue of filing a petition in State Court and an Amended Complaint in this Court, Gaughan Gaming seeks to disrupt these proceedings and deny the TTGC of its duty and responsibility to exercise its authority to determine the suitability of gaming licensees within tribal gaming operations on Tonkawa land. Gaughan also seeks an Order from this Court directing that

the Tribe immediately deliver possession and management control of the Tonkawa casinos to Gaughan Gaming, an entity that does not possess a current gaming license within the Tonkawa Tribe. Nothing under Federal law, Tribal law, or the Management Agreement authorizes or requires Gaughan Gaming to maintain possession and management control of the Tribe's casinos if its gaming license has been suspended. Under the provisions of IGRA, Gaughan Gaming may not legally manage the Tribe's casinos unless it possesses a valid gaming license issued by the Tribe. Unless and until Gaughan Gaming's license is fully restored by TTGC, no court can grant Gaughan Gaming the right to possess and maintain management control of the Tribe's casinos.

The gaming activity conducted at the Tribe's casinos as well as the management of those casinos are governed by IGRA, 25 U.S.C. Section 2701, *et seq*. The federal standards established by the requirements of IGRA are located in 25 C.F.R. Parts 502-577. These regulations provide a complex regulatory scheme for Indian gaming, which includes certain provisions placing the responsibility of regulating licensing upon two separate entities, the National Indian Gaming Commission ("NIGC") and tribal gaming commissions. IGRA requires tribes to submit tribal gaming resolutions and ordinances regulating the conduct of Class II and Class III gaming on Indian lands to the NIGC chairperson for review and approval. 25 U.S.C. Section 2710 (b)(2); (d)(1)(A)(ii). IGRA mandates that tribal gaming ordinances include specific provisions for licensing primary management official and key employees. Among other requirements, IGRA specifically

requires tribal gaming licensing regulations to include a standard whereby persons whose activities, habits and associations pose a threat to the public interest or create or enhance the dangers of unsuitable, unfair, or illegal practices shall not be eligible for employment. 25 U.S.C. Section 2710 (b)(2)(F)(ii)(II).

Under IGRA, tribes are required to license and regulate management contractors and their employees. The Tribe is expressly barred from employing unlicensed management contractors and employees of management contractors. Consequently, federal law clearly prohibits claims by Gaughan Gaming to possession, custody, and control of the gaming facilities unless it possesses a valid gaming license issued by the Tribe. Plaintiff's claim for relief violates federal law and interferes with the tribal administrative process mandated by IGRA.

Plaintiff is not seeking relief on the basis that the Tribe or the TTGC is attempting to assert jurisdiction over its objections; indeed, as a licensee, Gaughan Gaming explicitly consented to the regulatory authority of the TTGC on licensing matters. Further, nothing in the IGRA or NIGC regulations provide Gaughan Gaming with a private right of action against the Tribe or the TTGC on issues regarding its gaming license. *See, e.g., Tamiami Partners, Ltd. V. Miccosukee Tribe of Indians,* 63 F. 3d 1030, 1049 (11th Cir. 1995) (finding plaintiff failed to state a claim against tribe for alleged failure to comply with IGRA's licensing requirements because no implied cause of action in IGRA).

Plaintiff has provided no authority in support of the relief it seeks. As a matter of federal law, "Federal Courts should abstain when a suit sufficiently implicates Indian sovereignty or other important issues." *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F. 3d 1531, 1542, (10th Cir. 1995). The Tribe and Gaughan Gaming are currently engaged in arbitration to determine the issue of damages. Gaughan Gaming's rights under the provisions of the Management Agreement will also be addressed through arbitration. Any licensing issues should be resolved only by TTGC, the Tribe's lawfully recognized gaming regulatory body under federal and tribal law, and by tribal-state compact. Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and the action should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Tonkawa Tribal Gaming Commission respectfully requests this Court to dismiss this case under Fed. R. Civ. P. 12(b)(6) and for such further and other relief to which defendant may be entitled.

Respectfully Submitted,

/S/ Roger F. Wiley
Roger F. Wiley, OBA #11568
Rosette & Associates, PC
PO Box 1667
McAlester, OK 74501
480-242-4570
480-889-8997 (fax)
rwiley@rosettelaw.com

And

Ezekial J.N. Fletcher
Rosette & Associates, PC
Boji Tower
124 W. Allegan Street
Suite 1400
Lansing, MI 48933
(517) 367-7040
(517) 913-6443 (fax)
zfletcher@rosettelaw.com

**CERTIFICATE OF SERVICE**

I certify that on the 11th day of April, 2011, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jimmy Goodman
Regan Strickland Beatty
Crowe & Dunlevy, PC
20 North Broadway, Ste 1800
Oklahoma City, OK 73102-8273

D. Michael McBride III
Crowe & Dunlevy, PC
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313

Attorneys for Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa LLC

Gary S. Pitchlynn
O. Joseph Williams
Stephanie Moser Goins
Pitchlynn & Williams, PLLC
124 East Main Street
PO Box 427

Norman, OK

Attorneys for Tonkawa Tribe of Oklahoma

                    <u>/S/ Roger F. Wiley     </u>