UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

GAUGHAN GAMING - NATIVE           )
LIGHTS, LLC, and                  )
GAUGHAN GAMING - TONKAWA,         )
LLC,                              )
                                  )
            Plaintiffs,           )        Case No.: CIV-11-330-HE
                                  )
vs.                               )
                                  )
THE TONKAWA TRIBE OF              )
INDIANS OF OKLAHOMA and           )
THE TONKAWA TRIBAL GAMING         )
COMMISSION,                       )
                                  )
            Defendants.           )

**PLAINTIFFS GAUGHAN GAMINGS' RESPONSE TO TONKAWA TRIBE'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Respectfully submitted,

D. Michael McBride III, OBA # 15431
-Of the Firm-
CROWE & DUNLEVY, P.C.
321 South Boston Avenue, Ste. 500
Tulsa, Oklahoma  74103-3313
 (918) 592-9800
 (918) 592-9801 (Facsimile)

AND

Jimmy Goodman, OBA #3451
Regan Strickland Beatty, OBA #20349
-Of the Firm-
CROWE & DUNLEVY, P.C.
20 North Broadway, Ste. 1800
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)

ATTORNEYS FOR PLAINTIFFS GAUGHAN
GAMING-NATIVE LIGHTS, LLC AND
GAUGHAN GAMING-TONKAWA, LLC

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

ANALYSIS ...................................................................................................3

1.  Jurisdication – Rule 12(b)(1) ....................................................................3

2.  Sufficient Facts Exist to State a Claim Under Rule 12(b)(6) ...................4

3.  Sovereigns, Like Companies, Must Honor the Express Terms of Their
    Agreements ............................................................................................5

4.  Gaughan's Engagement Under the Management Agreements is
    Authorized and Approved by the NIGC Under IGRA & the Compact ......6

5.  The IRGA Requires Approved Dispute Resolution Procedures...............7

6.  NIGC Tonkawa Probation:  Pre-Opening Agreement Allegations
    Do Not Provide Sufficient Grounds for Summary Suspension of
    Gaughan's Licenses ...............................................................................8

7.  NIGC-Approved Management Agreements Have Force of Federal
    Law, and Therefore This Court Can Enforce the Dispute Resolution
    and Appeal Procedures Therein..............................................................10

8.  Oklahoma Law Applies............................................................................15

CONCLUSION .............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
___ U.S. ___, 129 S.Ct. 1937 (2009) ................................................................ 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 4

*Bryson v. Gonzales*,
534 F.3d 1282 (10th Cir. 2008) ........................................................................ 4

*Dooley v. Cordes*,
434 P.2d 289 (Okla. 1967) .............................................................................. 15

*Federal Power Commission v. Tuscarora Indian Nation*,
362 U.S. 99 (1960) ........................................................................................... 5

*First American Kickapoo Operations, LLC v. Multimedia Games, Inc.*,
412 F.3d 116 (10th Cir. 2006) .......................................................................... 7

*Frank v. Allstate Ins. Co.*,
727 P.2d 577 (Okla. 1986) .............................................................................. 15

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) ........................................................................ 5

*Jordan-Arapahoe, LLC vs. Board of County Commisioners of the County of Arapahoe, Co.*,
633 F.3d 1022 (10th Cir. 2011) ........................................................................ 4

*Principle Films, Inc. v. Wichita Mountains Easter Sunrise Service Ass'n*,
288 P.2d 734 (Okla. 1955) .............................................................................. 15

*Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*,
63 F.3d 1030 (11th Cir. 1995) .................................................................... 12, 13

*United States ex. rel. Bernard v. Casino Magic Corp.*,
293 F.3d 419 (8th Cir. 2001) ............................................................................ 6

*United States ex rel. Saint Regis Mohawk Tribe v. President R.C.—St. Regis Management Co.*,
451 F.3d 44 (2nd Cir. 2006) .............................................................................. 7

**STATUTES**

15 Okla. Stat. Ann. §157 ...................................................................................... 15

15 Okla. Stat. Ann. §160 ...................................................................................... 15

25 U.S.C. § 2701, *et seq("IGRA")*. .................................. 1, 6, 7, 10, 11, 12, 13, 16

25 U.S.C. § 2710(b)(2)(A) .................................................................................... 13

25 U.S.C. § 2711 .................................................................................................... 6

25 U.S.C. § 2711(b)(6) ........................................................................................... 7

25 U.S.C. § 2711(e)(4) ......................................................................................... 10

25 U.S.C. § 2711(g) .............................................................................................. 13

**OTHER AUTHORITIES**

25 C.F.R. Part 531 ................................................................................................. 6

25 C.F.R. Part 537 ................................................................................................. 6

25 C.F.R. § 531.1(k) ............................................................................................... 7

25 C.F.R. § 531 (a).............................................................................................. 10

25 C.F.R. § 533.6(b)(4) ........................................................................................ 10

25 C.F.R. § 533.7. ................................................................................................. 6

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 4

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ........................................................ 1, 4, 16

COME NOW, Plaintiffs, Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa, LLC (collectively "Gaughan"), to submit their response to Defendant Tonkawa Tribe of Oklahoma's ("Tribe") Motion to Dismiss (Dkt. # 17).  The Tribe moved dismissal pursuant to the Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The Court should deny the Motion because it has already determined that it has subject matter jurisdiction pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA") claim based on federal preemption of gaming licensing issues.  Order, Dkt. # 28 at p.1, 4-6.  To the extent the Court finds Gaughan's claims are solely contract claim issues, remand to state court would be appropriate.  Further, dismissal is improper because Gaughan alleges sufficient facts and allegations within the Petition to make its claims for relief plausible on its face.[1]  Gaughan exercises lawful rights within the Management Agreements[2] with the Tribe to seek declaratory and injunctive relief including (i) restoration of Gaughan to its position of manager of the casinos pending resolution of the arbitration proceedings; (ii) injunctive relief prohibiting the Tribe from actions designed to remove Gaughan from its manager position; and (iii) reinstatement of Gaughan's temporarily suspended gaming license

---

[1] Gaughan filed an Amended Complaint, Dkt. # 20 on March 28, 2011.  On April 11, 2011, both the Tribe and the TGC filed separate motions to dismiss Gaughan's Amended Complaint.  Dkt. 30 & 31.  The Amended Complaint adds a request for this court to review an appeal of the Tonkawa Tribal Gaming Commission's ("TGC") now final ruling on the suspension of Gaughan's gaming licenses.

[2] See Gaughan's Exhibits at 1 & 2 from March 28th, 2011 – Temporary Restraining Hearing. Dkt. # 21 Admission of Gaughan's exhibits.  All parties agree that both Management Agreements are identical regarding the operative terms.

pending the outcome of the underlying disputes in arbitration.   The Court has

jurisdiction to:

- "maintain [Gaughan's] possession . . . during any dispute, controversy, claim or disagreement arising out of this Agreement.   The Tribe expressly waives its sovereign immunity for disputes covered by Section 21.1."   Management Agreements, at § 21.1; and

- adjudicate "allowing the Manager [Gaughan] to take any and all actions necessary to contest, or seek appeal or review of, the decisions or procedures of the Tribal Gaming Commission or other regulatory body . . ."   Management Agreements at § 16.1 (b).

The Tribe (including its political subdivision, the Tonkawa Tribal Gaming

Commission ("TGC"))[3] has provided a limited waiver of  its immunity.   The

Management Agreements, approved by the National Indian Gaming Commission

Chairman pursuant to IGRA, enable this Court to review the TGC's decisions and

its procedures and enter appropriate declaratory and injunctive relief.   Such

actions do not contravene IGRA and are consistent with the parties' contractual

rights.   This Court can review the TGC's regulatory decisions and grant relief

provided under the Management Agreements consistent with IGRA and the

applicable regulations.

---

[3] The TGC concedes that it is a "political subdivision" and "arm of the tribe" citing the Tribe's Gaming Ordinance at § 3.1.  See Dkt. 15 at p. 3.  It is also bound by the Tribe's Management Agreements with Gaughan.

2

## ANALYSIS

### 1.      Jurisdiction—Rule 12(b)(1)

Upon seeking removal, the Tribe made contradictory arguments that it is immune to suit and that federal subject matter jurisdiction does not exist.  On one hand, it claims immunity then on the other, it concedes it waived immunity in the Management Agreements.   The TGC conceded jurisdiction to this Court upon removal in its joinder in notice of removal,  Dkt. # 7; and opposition to petition for temporary restraining order, Dkt. # 15.  Moreover, the Court found in its March 29 Order that:

> the doctrine of tribal sovereign immunity does not present a barrier to the relief plaintiffs seek here, as the management agreements include a specific waiver of sovereign immunity, "[f]or the purposes of allowing the Manager to take any and all actions necessary to enforce the provisions of [the management agreement] pursuant to the alternative dispute resolution procedures…[and] to take any and all actions necessary to contest, or seek appeal or review of, the decisions or procedures of the Tribal Gaming Commission…" Amended and Restated Management Agreement, Article 16.1(a),(b).

Order, Dkt. # 28, at p.6.   The Court determined that it has subject matter jurisdiction as to Gaughan's claims "premised on the pending licensing proceeding."  Order, p.5, fn.7.   The Tribe's lack of subject matter jurisdiction claims are moot.

## 2.  Sufficient Facts Exist to State a Claim Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  The Tenth Circuit recently held, "to survive a 12(b)(6) motion to dismiss, a plaintiff must allege that 'enough factual matter, taken as true, [makes] his 'claim to relief…plausible on its face.'"  *Jordan-Arapahoe, LLC vs. Board of County Commissioners of the County of Arapahoe, CO*, 633 F.3d, 1022, 1026 (10th Cir. 2011), citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]acial plausibility" exists "when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1940 (2009)(citing *Twombly*, 550 U.S. at 556).  See also, *Jordan-Arapahoe,* 633 F.3d at 1026, and *Gee v. Pacheco*, 627 F.3d 1178, 1182-83 (10th Cir. 2010).  The standard also "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.  While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level."  *Id.* at 555.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft*, 129 S.Ct. at 1949.

4

### 3.    Sovereigns, Like Companies, Must Honor the Express Terms of Their Agreements

Justice Hugo Black wrote in dissent that  "Great Nations, like great men, should keep their word."  *Federal Power Commission v. Tuscarora Indian Nation*, 362 U.S. 99, 142 (1960).  The failure to abide by gaming Management Agreements undermines the confidence in the fairness and propriety of tribal regulatory actions and of Indian gaming generally.  Here, Gaughan has alleged a conspiracy between the Tribe and the TGC to remove Guaghan and do away with rights protected under the Management Agreements.  Those Agreements, reviewed and approved pursuant to federal law enable Gaughan to assert and demonstrate a basis for broader declaratory and injunctive relief than the emergency temporary relief sought initially.  Under the Agreements Gaughan can contest the Tribe's and the TGC's joint actions to remove it from management.[4] Further, the Tribe covenants that it "will not adopt any amendments to the Gaming Ordinance that would adversely impede the Enterprise's ability to succeed in the market *or which would affect the Manager's rights under this Agreement* . . ."  Management Agreement at § 3.6 (emphasis added).  The Tribe

---

[4] The Management Agreements provide at § 3.5 "Manager's Compliance with Laws; Licenses" in relevant part:

> The Tribe shall not unreasonably withhold, withdraw, qualify or condition such licenses.  . . .  This Section shall not be interpreted as precluding Manager from challenging, in a forum of competent jurisdiction, any law or regulation, which Manager believes in good faith, is inconsistent with the IGRA, the Indian Civil Rights Act, 25 U.S.C. § 1302, the Compact, and/or terms of this Agreement . . .

cannot engage in the "force of law" to invalidate the Management Agreements. The TGC lacks delegated powers to act with the force of law.  Approval by the Chairman of the NIGC is the *sine qua non* for all management contracts.  The approval is the only act that validates the terms and conditions in a management contract.  New tribal leaders cannot change the terms or undo binding terms them without undergoing a new review and approval by the NIGC Chairman.  To allow contractual terms and conditions to be changes without following the terms of IGRA would undermine the integrity of Indian gaming.

### 4. Gaughan's Engagement Under the Management Agreements is Authorized and Approved by the NIGC Under IGRA & the Compact

The two Management Agreements Gaughan has with the Tribe each meets the strictures of IGRA.  The National Indian Gaming Commission ("NIGC") reviewed both and the NIGC Chairman approved them pursuant to 25 U.S.C. § 2711.  Gaughan complied with all of the required provisions for Management Agreements.  See, 25 C.F.R. Part 531.  Gaughan and its principals underwent and passed an extensive background investigation by the NIGC pursuant to 25 U.S.C. § 2711 and 25 C.F.R. Part 537.  Gaughan was properly licensed under the Compact at Part 10 (A)(1) & (B)(7).  The Management Agreements and Gaughan's principals passed NIGC muster.

Gaming management agreements that are not approved by the NIGC Chairman are void.  See 25 C.F.R. § 533.7.  *United States ex. rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 421 (8th Cir. 2001)(unapproved management

agreements were legally unenforceable); *First American Kickapoo Operations, LLC v. Multimedia Games, Inc.,* 412 F.3d 116 (10th Cir. 2006)(management contracts not approved by the Chairman are void). The NIGC has broad authority and administrative expertise to interpret the IGRA and its own regulations to determine whether management agreements comply with federal law. *United States ex rel. Saint Regis Mohawk Tribe v. President R.C.—St. Regis Management Co.*, 451 F.3d 44, 51 (2nd Cir. 2006)(NIGC has broad power to determine what does and does not require approval). Exercising its discretion and authority, the NIGC determined that the Management Agreements met the strictures of IGRA, and therefore, the Management Agreements at issue here are valid, enforceable contracts between the Tribe and Gaughan.

### 5. The IGRA Requires Approved Dispute Resolution Procedures

The IGRA requires that the "grounds and mechanisms" for termination of the contract be spelled out in tribal gaming management agreements. See 25 U.S.C. § 2711(b)(6). The NIGC regulations also require that dispute provisions be included. See 25 C.F.R. § 531.1(k). The dispute provisions in the Management Agreements include Gaughan remaining in possession, performing its management obligations during any disputes and granting Gaughan the right to seek review and reversal of TGC decisions. Management Agreement, Section §§ 21.1 & 16.1 (b). This is particularly dire where Gaughan has alleged facts of a conspiracy between the Tribe and the TGC (a purportedly independent body)

to oust it from its management role long before the expiration (or termination) of the Management Agreements.

### 6. NIGC Tonkawa Tribe Probation:   Pre-Opening Agreement Allegations Do Not Provide Sufficient Grounds For Summary Suspension of Gaughan's Licenses

Many of the allegations the TGC makes to justify summarily suspending Gaughan's gaming licenses are based on purported breaches of the Management Agreements.  These purported breaches were already subject to arbitration proceedings initiated by Gaughan earlier or were allegations subject to a probation and a $1 million fine agreement between the Tribe and the NIGC dated July 5, 2006 (Pre-Opening Agreement or "POA").[5]  By way of background, the Tribe previously conducted gaming with a tribal citizen manager who had no NIGC-approved management agreement.   Numerous federal agencies investigated the Tribe's gaming operations regarding allegations of infiltration of organized crime and other unlawful activity.  Grand jury investigations took place within the Western District of Oklahoma.  The NIGC issued a closure order No. CO-06-01 dated February 2, 2006.[6]  The POA permitted the reopening of the casino under certain conditions.   The NIGC approved the Management

---

[5] See POA on the NIGC website at:
http://www.nigc.gov/LinkClick.aspx?link=NIGC+Uploads%2Freadingroom%2Fenforcementactions%2Ftonkawatribeofok%2Fpoasa0601.pdf&tabid=124&mid=774 (last visited 04-18-2011).

[6] Available on the internet from the NIGC website at:
http://www.nigc.gov/LinkClick.aspx?link=NIGC+Uploads%2Freadingroom%2Fenforcementactions%2Ftonkawatribeofok%2FCO-06-01.pdf&tabid=124&mid=774 (last visited 04-18-2011).

Agreements between the Tribe and Gaughan shortly thereafter to resurrect gaming at the Tribe and to enable Gaughan to finance and build an additional new casino.

The NIGC has exclusive jurisdiction to determine whether a violation of the POA exists.  On February 2, 2011, the NIGC, after an extensive investigation, determined that insufficient evidence existed to find any violation under the POA alleged by the TGC.  However, the TGC continues to use the ruse of POA violations to support suspension of Gaughan's gaming licenses and as a reason to revoke Gaughan's licenses.  The TGC also suspended the gaming licenses of two of Gaughan's key employees, Greg Wright and Don Lanners in May 2010 exclusively claiming violations of the POA.  Again, the NIGC found insufficient evidence to support the POA violations the TGC claimed.  Nonetheless, the TGC has failed to reinstate their licenses.

The Tribe provides no authority for its assertions or insinuations that the TGC's licensing decisions as to Gaughan are unreviewable, final as a matter of federal law and that Gaughan is barred by federal law from exercising its rights under the Management Contracts to seek review or appeal.  To the contrary, this Court has the power to review appeals of the TGC's decisions with reference to Gaughan.

**7.     NIGC-Approved Management Agreements Have Force of Federal Law, and Therefore This Court Can Enforce the Dispute Resolution and Appeal Procedures Therein.**

The IGRA and NIGC regulations give the Management Agreements the force of federal law as it relates to the rights of the Tribe, the TGC and Gaughan. Conversely, the NIGC would not approve a gaming management agreement that conflicts with federal law.   NIGC regulations regarding review and approval of gaming management agreements require "that all gaming covered by contract will be conducted in accordance with [IGRA] and governing tribal ordinances." 25 C.F.R. § 531 (a)   In fact, the NIGC Chairman, pursuant to 25 U.S.C. § 2711(e)(4) and 25 C.F.R. § 533.6(b)(4) exercises the skills and diligence of a trustee to determine whether to approve such gaming management agreements.[7]

The Tribe waives its immunity within the Management Agreements and allows Gaughan to "contest, seek appeal or review of the decisions or procedures of the TTG" in § 16.1(b),   Gaughan seeks to enforce its right to remain in possession of the casinos and to continue performance during any

---

[7] See e.g. Final decision & Order, *In Re: The March 26, 2008 disapproval of a management contract between New Gaming Systems Inc. and the Sac & Fox Nation of Oklahoma* (NIGC, May 22, 2008) at p. 15-16 (discussing the trustee responsibilities of the Chairman in reviewing and approving management agreements).  Available on the internet at http://www.nigc.gov/LinkClick.aspx?link=NIGC+Uploads%2Freadingroom%2Fcommissionfinaldecisions%2FSac+and+Fox+FDO+5.22.08.pdf&tabid=618&mid=1047 (last visited 04-18-2011) and attached as Exhibit 5 to Complaint, Dkt. # 1 in *New Gaming Systems, Inc. v. NIGC, Phlip Hogen, Chairman, Norman Des Rosiers, Vice-Chairman, Sac & Fox Nation and Sac and Fox Nation Business Enterprise*, No. 08-CV-698-HE (W.D. Okla.)(challenging an NIGC final decision that an Indian gaming agreement not approved by the NIGC Chairman constituted an unapproved management agreement).

dispute.  The TGC is a political subdivision of the Tribe and is bound by the terms of the Management Agreements.  In addition to IGRA, the gaming ordinance, the tribal state gaming compact, the Tribe (and its TGC) agrees to be bound by the Management Agreements.

This Court has the full power to restore Gaughan to its position at the casino, to deliver control to Gaughan and to maintain the *status quo.*  In essence, the Tribe and the TGC seek to emasculate the terms of the NIGC-approved Management Agreements without recourse by claiming that the TGC may suspend and revoke Gaughan's licenses despite the rights and requirements of the Management Agreements.   To do so, would be to give no meaning whatsoever to the specific waivers of tribal immunity and specific requirements under the Management Agreements for the mechanisms of dispute resolution.

While the Tribe argues that the TGC procedures and the IGRA prevent Gaughan from "contesting, seeking appeal or review of the decisions or procedures of the TGC," such claims are not supported by the text of the IGRA. The Tribe fails to cite any specific provision of IGRA that enables the TGC to disregard the Management Agreements' provisions which modify tribal immunity and any contrary tribal law or regulations.

Gaughan has asserted a conspiracy (See ¶ 55 of the Petition (Dkt. #1) and ¶ 58 of the Amended Complaint (Dkt. #20) [8] that the Tribe and TGC are acting in joint concert to remove Gaughan from its rightful positions to possess and control the casinos during any dispute. Gaughan has asserted that the TGC has not acted independently.   Gaughan never consented to the Tribe and the TGC's conspiracy to deprive it of a license under the guise of an "emergency" because a contract dispute exists.   Sufficient facts exist to review and question whether Gaughan suddenly become "an imminent threat to health, safety or the integrity of gaming" a month after it declared its intent to invoke arbitration.   The Management Agreements contemplate that Gaughan shall remain in possession and control of the casinos during any such disputes, including this one.   The Tribe and TGC claim, without any authority that federal law requires Gaughan to be licensed and that the TGC can unilaterally suspend and revoke Gaughan's licenses without recourse to a judicial forum.   The NIGC-approved, IGRA-sanctioned Management Contracts clearly provide otherwise.

The Tribe cites *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1049 (11th Cir. 1995) for the proposition that a plaintiff failed to state a

---

[8]  On March 28, 2011 Gaughan filed an Amended Complaint (Dkt. #20).  In essence the Amended Complaint adds paragraphs 49 – 51 wherein Gaughan appeals the TGC final suspension order pursuant to the Management Agreement, Section 16.1(b).  The appeal is based on numerous grounds including that the TGC issued the suspension order based upon erroneous findings of fact and erroneous conclusions of law and the suspension is in direct violation of applicable regulations which limit the authority of the TGC to order any summary suspension.

Gaughan contests in the Amended Complaint the TGC's final suspension decision *within thirty days* of its issuance under its right to "contest, seek appeal or review of, the decisions or proceedings of the TGC."  Management Agreement at § 16.1(b).

claim against the tribe for alleged failure to comply with IGRA's licensing requirements because there is no implied cause of action in IGRA. *Tamiami* is readily distinguishable because in that case the tribal gaming commission refused to issue licenses it required under its management agreements. Here the TGC issued licenses and Guaghan has operated under those licenses since 2007. Gaughan's claims are not so much licensing claims but rather are contract claims. Because the contract at issue requires a license should *not* pre-empt Gaughan's contract claims. Gaughan seeks to enforce specific contractual provisions within the Management Agreements.

Along the same lines, the Tribe argues (Dkt. # 17 at p. 11) that IGRA prohibits Gaughan from having a "sole proprietary interest" in Indian gaming citing 25 U.S.C. § 2710(b)(2)(A) and that a management contract cannot "convey an interest in land or other real property, unless statutory authority exists and *unless clearly specified in writing in said contract."* 25 U.S.C. § 2711(g) (Emphasis added). To the extent the Management Agreements at § 21.1 "Performance During Disputes" gives Gaughan an interest in land or a proprietary interest in gaming this is expressly provided for in the Management Agreements, it is in harmony with the IGRA and it is an NIGC Chairman-approved dispute resolution provision. The Court should give this term its intended meaning and force.

The Tribe may also argue that within the Management Agreements "No arbitrator or a court shall have the power to compel, overturn, negate or any

manner modify any Tribal Governmental Action . . ." See § 16.2.   However, the Management Agreements define "Tribal Governmental Action" at § 2.47 as "any resolution, ordinance, statute, regulation or order or decision of the Tribe or any instrumentality or agency of the Tribe, regardless how constituted, that has the force of law."  "Tribal Governmental Action" does not apply to the TGC as it is performing an enforcement function, not a legislative function and thus, its actions do not have the force of law.  Actions such as those done by the Tribal Committee (the Tribe's legislature) under the Tonkawa Constitution have "the force of law."

Gaughan seeks *damages* properly through arbitration pursuant to the other dispute resolution processes provided in the Management Agreements. However, the Management Agreements also provide for declaratory and injunction relief from a court of competent jurisdiction.  While damages will be addressed by the arbitrators, this Court is empowered to grant declaratory and injunctive relief related to reviewing the TGC's affirmed suspension order and to restore Gaughan to its right to manage the casinos.  To grant the Tribe's motion to dismiss would have the effect of rendering the Management Agreement terms void and inoperable and of granting immunity to the Tribe.  The Tribe and the TGC's self-government powers and authority are circumscribed by the Management Agreements.  While the TGC may carry out its regulatory and enforcement functions, its decisions are subject to review and appeal to this

Court.  The Tribe (and TGC) consented to a system of federal oversight of the TGC's decisions through the Management Agreements.

### 8.     Oklahoma Law Applies

The Management Agreements at § 30 require the application of Oklahoma law:

> [T]he Arbitrator or a court of competent jurisdiction shall resolve any disputes in accordance with the law of the State of Oklahoma concerning construction of contracts for the limited purpose of interpretation of this Agreement in order to define the rights and obligations of the parties.

According to the Oklahoma Supreme Court,  "the courts of this state are bound by the statutory principles of construction of contracts to compare and harmonize the terms of the contract."  *Frank v. Allstate Ins. Co.*, 727 P.2d 577, 586 (Okla. 1986)(citing *Dooley v. Cordes*, 434 P.2d 289, 294 (Okla. 1967)).   Accordingly, "[t]he intention of the parties must be deduced from the entire agreement and every provision must be construed so as to be consistent with each other and that construction adopted which if possible, gives effect to every part of the contract."  *Principle Films, Inc. v. Wichita Mountains Easter Sunrise Service Ass'n*, 288 P.2d 734, 739 (Okla. 1955) (citations omitted); see also, 15 Okla. Stat. Ann. §157. The individual terms of the contract should be given their ordinary and popular meaning.  15 Okla. Stat. Ann. §160.  Accordingly, the provisions of the Management Agreements should be interpreted according to their plain meaning as a whole to harmonize with each other.  Thus, should this Court

15

determine that enforcement of the declaratory and injunctive provisions of the Management Agreements do not fall within the ambit of IGRA's federal preemption, the Court should consider remanding this case back to state court. The forced eviction of Gaughan from control and operation of the casinos is contrary of the plain terms of the Management Agreements.  For these reasons the Court should find that Gaughan has clearly stated sufficient claims for relief and that it should deny the Tribe's motion to dismiss.

## CONCLUSION

This Court has already determined that it has jurisdiction over these proceedings.  And, the TGC has conceded jurisdiction in this Court. Accordingly, any Rule 12(b)(1) arguments of the TGC are moot.

Gaughan has stated a claim under Rule 12(b)(6) where Gaughan has alleged facts sufficient to support a plausible conspiracy claim.  The TGC and the Tribe have conspired to remove Gaughan despite Management Agreements that are approved by the NIGC under IGRA.  The Tribe (and the TGC) have provided a limited waiver of immunity so that this Court can hear and enforce Gaughan's Management Agreement claims.  The Tribe and the TGC urges an implausible and impossible resolution—that no court has jurisdiction to hear disputes related to review and appeal of the TGC's decisions.  Such a resolution is not supported by, nor has the TGC asserted, any authority under IGRA or other federal law. Accordingly, the TGC's Motion to Dismiss must be denied and the Court should set a schedule for disposition of this lawsuit.

Respectfully submitted,

*/s/ D. Michael McBride III*

D. Michael McBride III, OBA # 15431

-Of the Firm-

CROWE & DUNLEVY
a Professional corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma  74103-3313
 (918) 592-9800
 (918) 592-9801 (Facsimile)

AND

Jimmy Goodman, OBA #3451
Regan Strickland Beatty, OBA #20349

-Of the Firm-

CROWE & DUNLEVY
A Professional Corporation
20 North Broadway
Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)

ATTORNEYS FOR PLAINTIFFS
GAUGHAN GAMING-NATIVE LIGHTS,
LLC AND GAUGHAN GAMING-
TONKAWA, LLC

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2011, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Gary S. Pitchlynn
O. Joseph Williams
Stephanie Moser Goins
Pitchlynn & Williams, PLLC
124 East Main Street
P.O. Box 427
Norman, Oklahoma 73070
Email: gspitchlynn@pitchlynnlaw.com
jwilliams@pitchlynnlaw.com
smgoins@pitchlynnlaw.com

Roger F. Wiley
Rosette & Associates PC
P.O. Box 1667
McAlester, Oklahoma 74502
Email:  rwiley@rosettelaw.com

Ezekiel J. Fletcher
Rosette & Associates PC
124 W Allegan St
Suite 1400
Lansing, MI 49833
517-367-7040
Fax: 517-913-6443
Email: zfletcher@rosettelaw.com

*/s/ D. Michael McBride III*

2139987.05.MCBRIDEM

18