55-APR Fed. Law. 44

**Federal Lawyer**
March/April, 2008

Indian Law
Focus On

IS THAT YOUR FINAL ANSWER?
The Legal Effect of a National Indian Gaming Commission Decision
That a Contract Is a Tribal Gaming Operation Management Contract

Jimmy K. Goodman, Amanda L. Maxfield [a1]

Copyright © 2008 by Federal Bar Association; Jimmy K. Goodman, Amanda L. Maxfield

**CONGRESS HAS GIVEN the National Indian Gaming Commission (NIGC) jurisdiction over and agency responsibility for most aspects of tribal gaming operations throughout the United States. One responsibility is to make decisions about the approval or disapproval of contracts between tribes and other parties that provide for the management of all or part of a tribal gaming operation.** 25 U.S.C. § 2711(a)(1); 25 C.F.R. § 502.15. **The chair of the NIGC must make that decision, which is subject to review first by the full commission, then in the appropriate federal court.**

Litigation sometimes results because of an omission from the NIGC's jurisdiction as it relates to this responsibility. Congress has not given the NIGC jurisdiction to make a determination, in the first instance, about whether or not a particular contract constitutes a management contract subject to approval or disapproval. This omission presents the greatest problems when the NIGC frustrates the intent of the tribe and its contractor by making such a finding adverse to the parties' expressed intent and also when the tribe seeks the cover of such a decision by the NIGC as a way to claim that the contract in question is "void" because the chair of the NIGC has not approved it, as required, and the tribe hopes to avoid its obligations to the other party. This often happens after the tribe has received benefits under the contract (and also while the tribe is under no legal obligation to submit the contract for review and approval as a management contract, pursuant to 25 C.F.R. §533.1 et seq.). In such a case the NIGC or the tribe argues that the unapproved management agreement is void, and litigation ensues.

This article explores this conundrum and argues that the sole jurisdiction for such a decision remains in the tribal, federal, or state court that has jurisdiction over the parties and the controversy, not with the NIGC. This article further argues that all NIGC decisions about the nature or intent of a particular contract are not binding on a court, but are only of persuasive authority at best.

In 1988, Congress enacted the Indian Gaming Regulatory Act (IGRA), codified at 25 U.S.C. § 2701, et seq., which "created a comprehensive scheme of regulation over Indian gaming with authority divided among the federal government, the States, and the Indian tribes." *Colorado River Indian Tribes v. National Indian Gaming Com'n*, 383 F.Supp.2d 123, 126 (D.D.C. 2005). "To carry out the federal government's responsibilities in the scheme, the IGRA created the National Indian Gaming Commission ("NIGC"), an independent federal regulatory agency within the Department of the Interior." *Id.* at 126-127.

In *First American Kickapoo Operations L.L.C. v. Multimedia Games Inc.*, 412 F.3d 1166 (10th Cir. 2005), the Tenth Circuit explained the role and duties of the NIGC with regard to management contracts, which the court defined as "contract[s] that 'provide[] for the management of all or part of a [tribal] gaming operation.'" *Id.* at 1168, n. 1 (quoting 25 C.F.R. § 502.15). As the court explained,

The Indian Gaming Regulatory Act ("IGRA") establishes a statutory basis for the operation and regulation of gaming by Indian tribes to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments," while simultaneously "shield[ing tribes] from organized crime and other corrupting influences [and] ensur[ing] that ... Indian tribe[s are] the primary

EXHIBIT 3

WestlawNext © 2011 Thomson Reuters. No claim to original U.S. Government Works.    1

beneficiar[ies] of ... gaming operations." 25 U.S.C. § 2702. The IGRA effects these goals in part by providing for federal oversight of contracts between tribes and non-tribal entities for the management of tribal gaming operations. Tribes may enter into contracts for the management of these gaming operations only with the approval of the National Indian Gaming Commission ("NIGC") Chairman. 25 U.S.C. § 2711(a)(1). Unapproved management contracts are void, 25 C.F.R. § 533.7. ... *Id*. at 1167-1168. The Tenth Circuit has also explained *\*45* that "*the NIGC's final determination regarding a gaming contract is final agency action subject to appeal under the [Administrative Procedures Act]*. 25 U.S.C. § 2714 ('Decisions made by the Commission pursuant to [§ 2711] shall be final agency decisions for purposes of appeal. ... ); *see also* 25 C.F.R. § 533.1(b) (outlining that '[gaming clontract approval shall be evidenced by a Commission document dated and signed by the Chairman [and that n]o other means of approval shall be valid')." *Miami Tribe of Oklahoma v. United States,* 198 Fed. Appx. 686, 690, 2006 WL 2392194, \*4 (10th Cir. 2006) (emphasis added).

A federal district court reviewing the NIGC's final agency actions--including those regarding gaming contracts--must grant those actions the deference described in the Administrative Procedures Act (APA) and in *Chevron U.S.A. Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837 (1984). *See Kansas v. United States,* 249 F.3d 1213, 1228 (10th Cir. 2001) (holding that "[b]ecause the merits of this case involve review of the NIGC's decision that the tract [of land] constitutes 'Indian lands' of the Tribe within the meaning of IGRA, the APA review principles enunciated in *Chevron* [] apply."); *Seneca-Cayuga Tribe of Oklahoma v. National Indian Gaming Com'n,* 327 F.3d 1019, 1037 (10th Cir. 2003) (holding that the NIGC's determinations with regard to classifying gaming devices under IGRA warranted *Chevron* deference); *Citizens Against Casino Gambling in Erie County v. Kempthorne,* 471 F.Supp.2d 295, 321-322 (W.D.N.Y. 2007) (holding that the NIGC's interpretation of provisions of the IGRA is to be afforded *Chevron* deference by the reviewing court, because the NIGC is the agency expressly charged by Congress with administering the IGRA). Under *Chevron*, "[a] federal court may not set aside an agency decision unless that decision fails to meet statutory, procedural or constitutional requirements, or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kansas,* 249 F.3d at 1228 (citing 5 U.S.C. § 706(2)(A)-(D)). (*See generally Nutraceutical Corp. v. Von Eschenbach,* 459 F.3d 1033, 1038 (10th Cir. 2006) ("The APA reflects the principles of *Chevron* and provides that agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements. When we review an agency's decision under the arbitrary, capricious or abuse of discretion standard [of the APA], our review is narrow and deferential; we must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors.") (internal citations and quotation marks omitted). Thus, if a party seeks to appeal the NIGC's final agency action regarding a management contract to a federal district court, that party may well have an uphill battle in obtaining a reversal of the NIGC's decision. Conversely, the party in whose favor the NIGC's final action weighs sits in a relatively comfortable position in the district court.

However, one must bear in mind that--

*not every "action" or activity undertaken by an agency constitutes "agency action" within the statutory context. ... [T]he APA's statutory definition of "agency action" ... includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."* 5 U.S.C. §551(13). *Promulgating a rule through rulemaking proceedings, issuing an order through an adjudication, taking action substantively affecting a license, and imposing a sanction are all acts falling within the statutory scheme. ...*

*... The terms an agency applies to its acts are irrelevant for purposes of determining if there is agency action. Simply because an agency refers to its act as an order, does not mean that it has issued an order within the meaning of the Administrative Procedure Act.* (Emphasis added.)

*Pharmaceutical Mfrs. Ass'n v. Kennedy,* 471 F. Supp. 1224, 1226-1227 (D. Md. 1979) (holding that the Food and Drug Administration's proposal to publish a list of therapeutically equivalent drugs providing comparisons among various pharmaceuticals containing identical generic active ingredients did not constitute "agency action") (footnotes omitted) (emphasis added). *See also Air Brake Systems Inc. v. Mineta,* 202 F. Supp. 2d 705, 711 (E.D. Mich. 2002) (holding that "not every 'action' taken by an agency constitutes 'final agency action' under the [APA]") (citing *Pharmaceutical Mfrs.*).

The only final agency actions that Congress empowered the NIGC to take through the IGRA with regard to management contracts are "approval" or "disapproval." 25 U.S.C. § 2711(b) and (e). *Jena Band of Choctaw Indians v. Tri-Millennium Corp. Inc.*, 387 F.Supp.2d 671, 677 (W.D.La. 2005) (holding that "under 25 U.S.C. § 2714 and 25 C.F.R. § 533.4, only determinations to approve or disapprove a management contract made by the Chairman of the NIGC after a 'complete submission' [of various materials] are final determinations."). Thus, an NIGC opinion letter, intermediate determination, or other informal pronouncement regarding a purported management contract is not entitled to *Chevron* deference and would be merely persuasive, but not binding, on a federal district court. Indeed, an action or opinion by the NIGC that is not final will only have the legal effect that the district court gives it under the principles set forth in *46 *Skidmore v. Swift*, 323 U.S. 134 (1944). "Under *Skidmore*, the weight to be afforded non-binding agency interpretations 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, 718-719 (10th Cir. 2000) (quoting *Skidmore*, 323 U.S. at 140) (holding with regard to opinion letters issued by the NIGC that interpret IGRA, "[a]lthough we are not obligated to afford these informal pronouncements the same deference prescribed under *Chevron*, such opinion statements are 'entitled to respect' under Skidmore.") (internal citations omitted). *See also Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 321 (W.D.N.Y. 2007) ("Interpretations such as opinion letters, policy statements, agency manuals and enforcement guidelines lack the force of law and do not warrant *Chevron*-style deference. Rather, interpretations contained in such formats are entitled to respect under ... *Skidmore* [] but only to the extent that, through the writer's thoroughness, logic, expertise, consideration of prior interpretations and the like, the interpretation at issue has the power to persuade.") (internal citations omitted).

For instance, in *First American Kickapoo*, 412 F.3d 1166, the Tenth Circuit considered an informal opinion letter authored by the NIGC's deputy general counsel identifying a particular contract as a management contract. The court held that "[t]he informal pronouncements of an agency, which are not subject to agency rule-making procedures, do not warrant *Chevron* deference. Rather than requiring our deference, such materials may be accepted by a court only as they have power to persuade.") *Id.* at 1174 (citing *Skidmore*, 323 U.S. 134, 140 (1944)) (internal citations omitted). Similarly, in *Jena Band*, 387 F. Supp. 2d 671, the court had before it a letter written by a deputy general counsel for the NIGC expressing the NIGC's belief that certain agreements and other related documents were management contracts or collateral agreements that were subject to its approval. The court held that this letter was "only an advisory opinion or opinion letter ... [and] not ... a final determination by the NIGC that the agreements are management contracts." *Id.* at 677. Thus, the court held that it owed no deference to the NIGC's opinion.

Therefore, a party involved in litigation regarding management contracts about which the NIGC has issued an *informal* opinion may be able either to use the NIGC's opinion to persuasive effect or, alternatively, to persuade the federal district court to come to a different conclusion.

Finally, in dealing with opinions or actions of the NIGC, one must be aware that the NIGC has no authority to determine the legal validity or effect of a management contract. *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412 (8th Cir. 1996), describes the limited type and effect of the NIGC's agency actions. The Eighth Circuit Court of Appeals held that--

The text of IGRA authorizes tribes to enter into management contracts for the operation and management of tribal gaming ventures. IGRA and its regulations further prescribe essential terms which must be contained in a management contract *before the same can be 'approved'* by the NIGC's Chairman. ... Along with the presence of an adequate tribal ordinance regarding gaming and satisfactory background checks for individuals and entities representing management parties, 25 U.S.C. § 2711(a), the presence of the various essential contract terms is critical *regarding federal approval of management contracts*.

So while *approval* of a management contract, either by the Secretary of the Interior or the Chairman of the NIGC, entails a fairly comprehensive and exhaustive examination of the document and surrounding circumstances, in the end *compliance with IGRA and the regulations is the sole focus*. Has all of the proper documentation been submitted? Does the document contain provisions addressing the required essential topics? Do the backgrounds of "interested parties" check out? We essentially agree with Lien's assessment that "[t]he review is not more than a paper review to test the sufficiency of the documents submitted to the Secretary of the Interior in the first instance and to review whether the management agreement meets the required contents [specified under IGRA]." Despite the breadth of the approval and review process, *passing on the legal validity of the document*

*(as opposed to approval for a contract seemingly in compliance with IGRA and the regulations) is not within the scope of the administrative bodies*.
*Id*. at 1417-1418 (internal citations omitted; emphasis added).

**Conclusion**

If you represent a tribe or a party that has a contract with a tribe and there is a dispute as to whether a particular contract is a management agreement, the only jurisdiction where you may receive a final and binding decision on that issue is in the appropriate tribal, federal, or state court that has jurisdiction over the parties and the controversy  *\*47*  (such as a valid waiver of sovereign immunity as to the tribe). The decision made by the NIGC may be helpful to one party or the other but is always subject to a de novo determination in the appropriate court, where the NIGC's decision is only part of the evidence a court should review in making a determination regarding the controversy. The NIGC's decision may be helpful to you or your client, but it will not be the last word if either party demands a judicial decision on the issue.

Footnotes

a1  *Jimmy K. Goodman is a director of Crowe & Dunlevy in the firm's Oklahoma City offices. He is a past president of the firm and a member of its Indian Law & Gaming Practice Group. He is a trial and appellate lawyer with a practice emphasis in complex business and commercial litigation, gaming, and Indian law. He is an active member of the American Bar Association, serves as Oklahoma's delegate to the ABA's House of Delegates, and has served on the Commission on Racial and Ethnic Diversity. He is a graduate of Stanford Law School and the University of Oklahoma. Amanda L. Maxfield is an associate at Crowe & Dunlevy in the Oklahoma City offices and is a member of the firm's Indian Law & Gaming Practice Group. She is a litigator with experience in gaming, insurance, initiative petitions, and white-collar criminal matters. She served as a clerk for Hon. Robert H. Henry of the Tenth Circuit Court of Appeals. She is a summa cum laude graduate of the University of Oklahoma College of Law and received her undergraduate degree from the same university.*

**End of Document**  © 2011 Thomson Reuters. No claim to original U.S. Government Works.