**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| GAUGHAN GAMING – NATIVE | ) | |
| LIGHTS, LLC and GAUGHAN | ) | |
| GAMING – TONKAWA, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:11-cv-00330-HE |
| | ) | |
| TONKAWA TRIBE OF OKLAHOMA | ) | |
| and TONKAWA TRIBAL GAMING | ) | |
| COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TONKAWA TRIBAL GAMING COMMISSION'S REPLY TO GAUGHAN**
**GAMING'S COMBINED RESPONSE TO TONKAWA TRIBE'S AND TONKAWA**
**TRIBAL GAMING COMMISSION'S MOTIONS TO DISMISS**
**AND BRIEF IN SUPPORT**

COMES NOW Defendant, Tonkawa Tribal Gaming Commission, ("TTGC"), by and through its counsel of record, and hereby respectfully submits its Reply in response to Gaughan Gaming's Combined Response to Tonkawa Tribe's and Tonkawa Tribal Gaming Commission's Motions to Dismiss (Dkt. # 35). In Reply, TTGC alleges and states as follows:

I.      **The Tonkawa Tribal Gaming Commission is Not a Party to the Management Agreement Upon Which Plaintiffs' Claims are Based**

In an attempt to procure federal court oversight of a tribal gaming regulatory process, Gaughan Gaming filed an Amended Complaint against Tonkawa Tribal Gaming Commission ("TTGC"), alleging breach of two Management Agreements. TTGC is not a party to either of the two Management Agreements. The agreements forming the basis of Plaintiffs' claims were entered into between the Tonkawa Tribe and two Gaughan Gaming entities. The few references to TTGC in the 49 page Management Agreement are general acknowledgments of TTGC's authorities as the Tribe's gaming regulator. No provisions within the Management Agreements identify TTGC as a party to the agreement nor do any of the contractual provisions contain language expressly and unequivocally consenting to suit against TTGC in federal court.

Gaughan Gaming stated that its "claims are not so much licensing claims but rather are contract claims." Dkt. # 33 at p. 17, 6-7. Indeed, the bulk of the Amended Complaint raises alleged breaches of the Management Agreements by the Tonkawa Tribe. Gaughan Gaming and the Tonkawa Tribe are presently engaged in arbitration to address the damages asserted. Plaintiffs only purpose in retaining TTGC as a defendant in this lawsuit is to solicit administrative control of a tribal gaming regulatory commission by a federal court. It does so although the TTGC has not yet completed the regulatory process about which Gaughan Gaming complains. In the Order of March 30, 2011, this Court noted Gaughan Gaming has not "submitted evidence sufficient to

establish a likelihood of the TGC taking steps that will cause injury to them. There is no reason, on the present showing, to conclude that the TGC will do other than make a good faith effort to apply the applicable law and its own rules to any determination it must make." Order at 10. Sure enough, the TTGC abuses anticipated by Gaughan Gaming as a basis for seeking the Temporary Restraining Order against TTGC never came to fruition.

As Gaughan Gaming approaches its upcoming gaming license revocation hearing before the TTGC, it again anticipates the same injuries  and abuses it was unable to establish in the TRO hearing, and is unable to establish still yet. Gaughan Gaming uses this case against TTGC as a method of "warming the engine" so any adverse ruling by TTGC of any nature whatsoever may be immediately reviewed in federal court. Gaughan Gaming vehemently complains about violations of the Management Agreements while simultaneously disregarding the clear terms of those very agreements by seeking federal court intervention into a tribal regulatory process. Plaintiffs have established neither the need, nor the authority for federal court review.

Gaughan Gaming fails to allege any facts to support federal court intervention into a pending tribal regulatory matter. Although Gaughan claims its request for this Court's review of the TTGC's now final ruling on the suspension of Gaughan's gaming license raises sufficient facts to overcome dismissal, Gaughan fails to establish through the Management Agreements, IGRA, or Tonkawa Tribal Ordinances that jurisdiction in

this court is proper. Gaughan Gaming has failed to provide a sound reason why this Court should adjudicate the claims asserted under the Management Agreements rather than allow the arbitration panel to handle the matter as Gaughan had contractually agreed to permit.

Oversight of a tribal gaming commission by this Court would interject the Court squarely into an area that Congress determined to be better left in tribal hands. Had Congress wished to establish a system of federal court oversight of decisions by tribal gaming regulators, it could have easily done so. However, in the intricate balancing of rights and responsibilities the Indian Gaming Regulatory Act ("IGRA") represents, it did not. Not only would the oversight of a tribal gaming regulator by a federal court upset the processes established by the IGRA, it would risk inundating the Court with tribal gaming license disputes.

II.     **The Tonkawa Tribe's Limited Waiver of Immunity Does Not Include Consent to Federal Court Review or Oversight of a Tribal Regulatory Process.**

TTGC's duty to continually observe the conduct of all licensees to determine qualifications and suitability of operations is a crucial function to assure the legal operation of gaming activities on Tonkawa land. The TTGC is "charged by law with the duty of continually observing the conduct of all licensees to the end that licenses shall not be held by unqualified or disqualified person or persons, whose operations are conducted in an unsuitable manner." (Dkt. # 15-4, Section 16.17). Unless these duties

are vigilantly performed by TTGC, the consequences are harsh. The Tonkawa Tribe has had its gaming privileges terminated in recent years for failing to exercise the administrative duties to assure that gaming operations on tribal land were operated by suitable, qualified licensees. The Tribe well knows the dire consequences of losing the privilege of conducting gaming activities. Essential tribal services are funded by gaming operations including law enforcement, education, and social services. Without the funding generated from gaming activities, the health and welfare of Tonkawa Tribal citizens who rely on these services is adversely affected.  Considering the harsh consequences of any failure of TTGC to perform its responsibilities under federal and tribal gaming law, TTGC must diligently perform its duties. The vigilant enforcement of gaming laws enables the Tribe to continue operating gaming activities to generate the funding necessary for essential government services.

Gaughan Gaming is not seeking relief on the basis that TTGC is attempting to improperly assert jurisdiction over it. As a licensee, Gaughan Gaming explicitly consented to the regulatory authority of the TTGC on licensing matters. Furthermore, nothing in the IGRA, the Tribal Ordinances, or the Tribal Gaming Regulations provide Gaughan Gaming with a private right of action against the  TTGC on issues involving its gaming license. *See, e.g., Tamiami Partners, Ltd. V. Miccosukee Tribe of Indians,* 63 F. 3d 1030, 1049 (11th Cir. 1995). Plaintiffs cite no law authorizing this Court to intervene into TTGC's own proceedings or to grant any of Plaintiffs' affirmative requests. Except in rare

circumstances, federal law does not authorize federal courts to interfere with tribal processes in the first instance. *See Kerr-McGee Corp. v. Farley,* 115 F. 3d 1498, 1507 (10th Cir. 1997).

Plaintiffs cite selective language from various sections of the Management Agreements to support the assertion that regulatory decisions made by TTGC may be reviewed by this Court. However, careful review of the Management Agreements reveal otherwise. Article 2.47 of the Management Agreements provides: "Tribal Governmental Action" means any resolution, ordinance, statute, regulation, order, or decision of the Tribe or any instrumentality or agency of the Tribe, regardless of how constituted, that has the force of law. (Dkts.  34-1 and 34-2, Art. 2.47). A TTGC Order is a tribal governmental action because it has the force of law. For example, if the TTGC issues an order revoking a gaming license, the affected licensee may not legally conduct gaming in Tonkawa tribal casinos pursuant to both tribal and federal law. Thus, a TTGC decision or order is a tribal government action.  Article 16.1 of the Management Agreements provides:

> Subject, at all times, **to the prohibition against compelling, overturning, negating or in any manner modifying any Tribal Governmental Action** as set forth in <u>Section 16.2</u> below, the Tribe hereby grants to the Manger a limited waiver of sovereign immunity with respect to the following purposes and for no others . . . . (Dkts. 34-1and 34-2, Art. 16.1).

Section 16.2 referenced above reveals yet another clear, expressed rejection of

Plaintiffs' claim of waiver of immunity for the purpose of federal court review of TTGC

decisions.

> 16.2 <u>Restriction on Actions Impacting Tribal Governmental Action</u>.
> No arbitrator or court shall have the power to compel, overturn,
> negate or in any manner modify any Tribal Governmental Action . . . .
> (Dkts. 34-1 and 34-2, Art. 16.2).

Reiterating the same limitations on the waiver of immunity in sequential paragraphs of

the Management Agreements demonstrates a clear intent to vest the TTGC with

regulatory authority over all licensing matters consistent with the provisions of the

IGRA. Plaintiffs' contention that the limited waivers authorize this Court to review TTGC

decisions and rulings is simply not supported by the clear, unequivocal terms of the

Management Agreements.

     The limited waiver of immunity contained in the Management Agreements does

waive the Tribe's immunity from suit in the United States District Court for the Western

District of Oklahoma but such waiver applies only to the enforcement of an arbitration

award against the Tribe. (Dkts. 34-1 and 34-2, Art. 16.1 (c)).  Article 16.1 (c) states "the

limited waiver contained in this Section applies only to arbitration with Manager

conducted in accordance with Article 20 of this Agreement and to no other entity or

person." The necessity of a clear, expressed, unequivocal waiver of tribal immunity

under federal law has not been met. Because plaintiffs have wholly and completely

failed to identify any clear, expressed, unequivocal waiver by the Tonkawa Tribe, the

Amended Complaint should be dismissed.


                                        Respectfully Submitted,


                                        /S/ Roger F. Wiley
                                        Roger F. Wiley, OBA # 11568
                                        Rosette & Associates, P.C.
                                        PO Box 1667
                                        McAlester, OK 74502
                                        480-242-4570
                                        480-889-8997 (fax)
                                        rwiley@rosettelaw.com

                                        And

                                        Ezekial J.N. Fletcher
                                        Rosette & Associates, P.C.
                                        Boji Tower
                                        124 W. Allegan Street
                                        Suite 1400
                                        Lansing, MI 48933
                                        (517) 367-7040
                                        (517) 913-6443 (fax)
                                        zfletcher@rosettelaw.com

## CERTIFICATE OF SERVICE

I certify that on the 9th day of May, 2011, I electronically transmitted the attached
document to the Clerk of the Court using the ECF System for filing. Based on the records

currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jimmy Goodman
Regan Strickland Beatty
Crowe & Dunlevy, PC
20 North Broadway
Oklahoma City, OK 73102-8273

D. Michael McBride III
Crowe & Dunlevy, PC
500 Kennedy building
321 South Boston Avenue
Tulsa, OK 74103-3313

Attorneys for Gaughan Gaming-Native Lights, LLC and Gaughan Gaming-Tonkawa LLC

Gary S. Pitchlynn
O. Joseph Williams
Stephanie Moser Goins
Pitchlynn & Williams, PLLC
124 East Main
PO Box 427
Norman, OK 73069

Attorneys for Tonkawa Tribe of Oklahoma

/S/ Roger F. Wiley